Robert HUDSON and Andy
Wright, Petitioners,

v.

Marion and Jean WAKEFIELD,
Respondents.

No. C–1485.

Supreme Court of Texas.

Jan. 26, 1983.

Rehearing Denied March 2, 1983.

Simms, Harpole & Berkel, John W. Berkel, Houston, for petitioners.

W.A. Keils, Jr., Teague, J.W. Robinson, Humble, for respondents.

KILGARLIN, Justice.

Petitioners, Robert Hudson and Andy Wright (hereinafter referred to as "Purchasers") brought this suit to enforce specific performance of a contract for the sale of real property owned by Respondents, Marion and Jean Wakefield (hereinafter referred to as "Sellers"). The trial court granted Sellers' Motion for Summary Judgment on the grounds that the instrument on which specific performance was sought never attained the status of a contract because the check for earnest money was returned due to insufficient funds. The court of appeals affirmed. 635 S.W.2d 216. We reverse the judgments of the trial court and the court of appeals and remand this case for determination of the fact issue of whether a material breach has occurred.

The facts [1] are as follows:

On March 18, 1981, Sellers entered into a written contract with Purchasers for the sale of a 186 acre tract of land in Freestone

1. Summary judgment proof consisted of the following: affidavits from both sellers, as well their oral depositions, affidavit and oral deposition from Betty Conovan, manager of Freestone County Title and Abstract Company, oral deposition of one of Sellers' attorneys, J.W. Robinson, affidavits from one of the Purchasers, Robert Hudson, his agent, Denis Gilchrist, and from Robert Dunham, an officer of First International Bank in Houston.

County.[2] Pursuant to the terms of the contract, Purchasers paid $5,000 earnest money in the form of a check dated March 18, 1981, drawn on the First International Bank in Houston and payable to Freestone County Title and Abstract Company, Inc., said check being signed by Purchaser Robert A. Hudson. On March 24, 1981, the check and contract were delivered to the title company and on the following day the company manager, Betty Conovan, deposited Purchaser's check for collection in the Fairfield State Bank. On March 30, 1981, First International Bank in Houston returned the check to Fairfield State Bank with the notation "N.S.F." (not sufficient funds).[3] Sometime between April 7, 1981, and April 24, 1981, Conovan was advised by the Fairfield State Bank of the return of the check.

Sellers signed a contract to sell the same 186 acres to J.W. Robinson, their attorney, on March 19, 1981.[4] Thereafter, Purchasers' attorney wrote Sellers demanding specific performance of the contract with Purchasers. On April 7, 1981, Robinson and Sellers entered into a release of their March 19,

1981 contract. On April 8, however, Purchasers sued Sellers for specific performance. On April 24, 1981, Conovan wrote Sellers, advising them of the return of the earnest money check for reason of insufficient funds, and stated that the file was being closed. Four days later, attorney Robinson wrote Purchasers, advising them of the return of the earnest money check, that the contract was thereby terminated, and demanded a dismissal of the suit, with prejudice.

As soon as Purchasers found out about the insufficiency of the check, they took the following actions: (1) requested the title company to again present the check for payment, which the title company refused to do; (2) thereafter, had $5,000 wire transferred to Fairfield State Bank and asked the title company to draw on it, which the title company likewise refused to do; and (3) on May 28, 1981, tendered a $5,000 cashier's check, which the title company refused to accept.

The threshold question is whether the earnest money provision of the contract[5]

2. Sellers claim they did not sign the contract until March 24, 1981. The disparity in dates has no effect upon our holding.

3. First International Bank V.P. Dunham stated in his affidavit that had the check been presented in the normal manner (regular clearing process) rather than for collection, it would have been paid because at all times Hudson had sufficient funds on deposit with the bank to cover the $5,000.00 check.

4. The contract between Sellers and their attorney has no effect upon our holding and is mentioned solely to explain why Purchasers filed their suit for specific performance when they did.

5. Relevant portions of the contract are as follows:

### Article IV
### Purchaser's Obligations

The obligations of Purchaser hereunder to consummate the transaction contemplated hereby are subject to the satisfaction of each of the following conditions (any of which may be waived in whole or in part by Purchaser at or prior to the closing).

Within 30 days after the date hereof, Seller, at Seller's sole cost and expense, shall have caused the title company to issue title report.

Said title report shall be subject only to the liens above described and to the following:

1. Any reservations of oil, gas or other minerals affecting the above described tract of land presently of record.

2. Any easements affecting the above described tract of land presently of record.

Seller shall deliver to Purchaser prior to closing an estoppel letter signed by the holders of any existing indebtedness secured by the above described property, stating that through November 7, 1980, that no default exists under either the Deed of Trust or mortgage [sic] notes or any instruments securing the payment of same; that all installments of principal and interest payable through November 7, 1980, that the next principal and interest payment on either note is May 1, 1981; the amount of the unpaid balance of each of the above described notes; and there have been no modifications or amendments to any of the Deeds of Trust or mortgage instruments.

Seller shall have performed, observed and complied with all of the covenants, agreements and conditions required by this agreement to be performed, observed and complied with by him prior to or as of the closing.

\* \* \* \* \* \*

amounted to a condition precedent or a covenant. Purchasers contend that rather than being a condition precedent, the earnest money provision of this particular instrument was but one of the many covenants of the parties and that Sellers were not entitled to back out of the agreement because of the return of the earnest money check. Sellers urge that the earnest money provision was a condition precedent to the formation of the contract. If they are correct, they must prevail. However, if, as Purchasers contend, the provision was but a covenant of the contract, then the granting of a summary judgment for Sellers was error.

For authority that the earnest money provision in the contract was a condition precedent, Sellers rely upon *Slam Properties v. Pickett,* 495 S.W.2d 381 (Tex.Civ. App.—Tyler 1973, writ ref'd n.r.e.), *Bowles v. Fickas,* 140 Tex. 312, 167 S.W.2d 741 (1943), and *Antwine v. Reed,* 145 Tex. 521, 199 S.W.2d 482 (1947). The earnest money provisions of the contracts in *Bowles v. Fickas, supra,* and *Antwine v. Reed, supra,* are distinguishable from those in the case at bar. In the first case, Fickas (purchaser) wrote a letter to Bowles, enclosing a copy of the proposed contract, and stated that if Bowles wished to accept the contract as drawn, she should sign same and instruct her bank to see to it that Fickas put up $1,000. After revising the contract, Bowles instructed her bank to hold the contract until the deal was closed, but after two

things had occurred: (1) Fickas had signed the revised contract and (2) Fickas had put up $1,000 "forfeit." Fickas signed the contract but did not deposit the $1,000 earnest money. Approximately eighteen days later, Bowles declared the deal terminated and two days thereafter Fickas deposited $1,000 as earnest money with the bank. This Court observed:

> Under the facts as set out above, the thing which the bank was to hold in escrow for the parties was to be a contract. The instrument in question never acquired that character. The instrument remained what it was when it first came to the hands of the bank, namely, the offer or proposal of Mrs. Bowles to be bound by the terms specified in the instrument if Mrs. Fickas, in turn, signed the instrument and deposited the earnest money as prescribed in Mrs. Bowles' letter to the bank.

140 Tex. at 314, 167 S.W.2d at 742–43.

The distinction in *Antwine v. Reed, supra,* from the present case is much more pronounced. In *Antwine,* the parties never even had a meeting of the minds on how much the earnest money was to be as the space in the proposed contract for the insertion of the earnest money amount was left blank.

The language in *Slam Properties v. Pickett, supra,* closely resembles the language in the case at bar. In *Slam Properties,* the contract[6] provided for $6,000 as earnest

---

Article VII

Escrow Deposit

For the purpose of securing the performance of Purchaser under the terms and provisions of this agreement, Purchaser has delivered to Freestone County Title, Fairfield, Texas, the sum of $5,000.00 the Escrow Deposit, which shall be paid by the title company to Seller in the event Purchaser breaches this agreement as provided in Article IX hereof. At the closing, the Escrow Deposit shall be paid over to Seller and applied to the cash portion of the purchase price.

\* \* \* \* \* \*

Article IX

Breach by Purchaser

In the event Purchaser should fail to consummate the purchase of the property, the conditions to Purchaser's obligations set forth in Article IV having been satisfied and

Purchaser being in default and Seller not being in default hereunder, Seller shall have the right to (1) bring suit for damages against Purchaser; or (2) receive the Escrow Deposit from the title company, such sum being agreed on as liquidated damages for the failure of Purchaser to perform the duties, liabilities and obligations imposed upon it by the terms and provisions of this agreement, and Seller agrees to accept and take said cash payment as its total damages and relief and as Seller's sole remedy hereunder in such event.

6. The significant provisions of the contract are:

The purchase price is $65,000.00; payable as follows: $6,000.00 cash, of which the Purchaser has deposited with Commercial Title the sum of $6,000.00 as earnest money and

money. Both seller and purchaser signed the contract and purchaser wrote a check for $6,000, giving it to his agent, who stated that she would deposit the check with the title company on Monday (the date of the signing occurring on a Saturday). On Monday, purchaser's agent did not tender the check to the title company, and on Tuesday, purchasers' agent advised seller that purchaser no longer wished to purchase the property. The Tyler court, relying on *Bowles v. Fickas, supra,* and *Antwine v. Reed, supra,* held that the instrument in question never acquired the character of a contract because the offer to sell was conditioned upon the deposit of $6,000 with the title company, which was not done. 495 S.W.2d at 383.

In our opinion, the case cited by Purchasers, *Cowman v. Allen Monuments, Inc.,* 500 S.W.2d 223 (Tex.Civ.App.—Texarkana 1973, no writ), correctly states the law. In *Cowman,* the instrument entitled "Earnest Money Contract" provided that sellers agreed to sell and buyer agreed to buy the property described therein for the price and upon the terms set out. It further provided that the total sales price was "$12,500.00; payable as follows: $12,500.00 cash, of which buyer agrees to forthwith deposit with the State First National Bank of Texarkana, Arkansas, Escrow Agent, the sum of $1500.00 as earnest money, to bind this sale...." *Id.* at 225. At the time the contract was signed, buyer's attorney made out a check in the amount of $1,500, payable to the sellers, which was placed in an envelope on which was written "only to be opened by Norman Russell, Allen Monument Contract," and such was delivered to the escrow bank. Sellers subsequently refused to convey and buyer filed suit for specific performance. Sellers contended that as the check was never converted to cash, buyer could have stopped payment on the check at any time.

The Texarkana court held that since this was simply a contract to sell real estate, which required an earnest money payment and was not an escrow agreement, the law of contracts and the equitable principles of specific performance controlled the case, rather than the law of escrows. *Id.* at 226. The court rejected the sellers' contention that the contract never became a binding contract because the earnest money had not been deposited as required. Finally, the court concluded that what was really at issue was whether or not the placing of a check for $1,500 rather than cash for $1,500 with the escrow agent was a breach of the contract so material as to authorize the sellers to repudiate the contract, which question is one of fact, to be determined by the trier of facts. *See, e.g., Mabry v. Priester,* 161 Tex. 173, 177, 338 S.W.2d 704, 707 (1960); 17 Am.Jur.2d § 378, page 822.

This Court held in *Schwarz-Jordan, Inc. of Houston v. Delisle Construction Co.,* 569 S.W.2d 878, 881 (Tex.1978) that "[i]t is a rule of construction that a forfeiture by finding a condition precedent is to be avoided when possible under another reasonable reading of the contract." In order to determine whether a condition precedent exists, the intention of the parties must be ascertained and that can only be done by looking at the entire contract. *Stitt v. Royal Park Fashions, Inc.,* 546 S.W.2d 924 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). A reading of the contract here leads to only one conclusion: that the earnest money was intended as a penalty for a breach, and not as a condition precedent to the contract. To the extent that *Slam Properties v. Pickett, supra,* is in conflict with this opinion, it is disapproved.

---

part payment, the receipt of which is hereby acknowledged by said deposit holder, and the balance is to be paid as follows:

  Purchaser to be given ten days to secure financing in the amount of $42,000.00.

  Seller agrees to accept a second lien note from the Purchaser, in the amount of $17,000.00 @ 8% interest for ten years, payable monthly, including principle (sic) and inter-

est, starting one month after closing. Said note may be paid off in full, at anytime, without penalty.

  \*   \*   \*   \*   \*   \*

  Closing to be as soon as possible, but not later than five days after Purchaser arranges financing. \* \* \*

495 S.W.2d at 382.

Having concluded that the earnest money provision in the contract was a covenant, and not a condition precedent, we reverse the judgments of the lower courts and remand the cause to the trial court to determine whether the return of the earnest money check because of insufficient funds was such a material breach of the contract as to warrant Sellers' repudiation of same.[7]

Dissenting Opinion by McGEE, J., in which CAMPBELL, J., joins.

McGEE, Justice, dissenting.

Because I agree with the holding of the court of appeals in this case and the holding of the court in *Slam Properties v. Pickett*, 495 S.W.2d 381 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.), I respectfully dissent. In my opinion the purchasers' payment of five thousand dollars to the title company was a condition precedent to the formation of a binding contract.

Even if the provisions of the earnest money contract are construed as a covenant, the purchasers would not be entitled to specific performance as a matter of law. Assuming a contract had been formed, the failure of the purchasers' bank to honor the five thousand dollar check was a material failure of performance, or failure of consideration. As such, the seller's duty of performance under the contract was excused. *See S & H Supply Co. v. Hamilton*, 418 S.W.2d 489, 492 (Tex.1967) (Greenhill, J., dissenting).

CAMPBELL, J., joins in this dissent.

---

**7.** Modern authorities now apply the maxim "de minimis non curat lex" so that what is required is merely substantial, and not literal, compliance with the terms of the contract. *See, e.g.,* *William F. Klingensmith, Inc. v. David H. Snell L.C., Inc.,* 265 Md. 654, 291 A.2d 56, 63 (1972), citing *Spence v. Ham,* 163 N.Y. 220, 226, 57 N.E. 412, 413 (1900).