NO. 07-01-0428-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MAY 27, 2003


______________________________



LIMESTONE GROUP, INC.



 Appellant


v.


 

SAI THONG, L.L.C.,



 Appellee

_________________________________



FROM THE 157TH DISTRICT COURT OF HARRIS COUNTY;



NO. 98-33467; HON. GEORGE HANKS, PRESIDING


_______________________________



Opinion


________________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)


 Before us is the appeal and cross appeal of Limestone Group, Inc. (Limestone) and
Sai Thong, L.L.C. (Sai Thong), respectively. We affirm the judgment of the trial court.

Background


 The dispute arises from an attempted conveyance of land. The parties initially
executed an agreement under which Sai Thong agreed to sell Limestone a parcel of
property. Limestone apparently desired to develop this parcel, which desire attracted the
attention of inhabitants who lived adjacent to it. Those inhabitants initiated suit to thwart
either the sale of the land or Limestone's interest in developing it. Furthermore, this suit
had the apparent effect of causing Sai Thong and Limestone to amend their initial
agreement. Indeed, the parties modified it 11 times over the course of their relationship. 
So too did they fail to complete the transaction. This resulted in the two pursuing claims
against each other.

 Limestone sought specific performance of the accord. In turn, Sai Thong asked the
trial court to declare that it did not have to convey the property because Limestone
defaulted. The default involved its failure to pay $75,000 as earnest money by a specified
date; the prospective buyer only delivered $25,000. Moreover, Limestone does not dispute
that it failed to pay the entire sum. 

 Upon trial to the court, judgment was entered denying Limestone specific
performance and ordering Sai Thong to pay its opponent damages equal to the amount
of the earnest money actually delivered. So too did the court enter findings of fact and
conclusions of law. Therein, it expressed that Limestone "was in breach of the Contract
as amended as a result [of] its failure to deposit . . . on or before December 30, 1998, the
$75,000.00 of Final Earnest Money." This breach "entitled Sai Thong to a declaratory
judgment repudiating the Contract . . . ." Yet, the trial court also found that "Limestone had
a reasonable expectation given the relationship between the parties and previous
extensions that Sai Thong would give Limestone reasonable notice of the termination of
the [neighbor's suit] and an opportunity . . . to tender the final earnest money before Sai
Thong repudiated the Contract." "Sai Thong did not do either . . . prior to repudiating the
Contract," according to the trial court. The latter also held that awarding Sai Thong
attorney's fees "under the circumstances of this matter," "would not be equitable or just." 
Both litigants then appealed.

Limestone's Point


 Via its appellant's brief, Limestone asserts one issue or point. It asks whether "the
Buyer's failure to make a final deposit of earnest money preclude[d] the remedy of specific
performance?" The prospective buyer says that it does not because its obligation to pay
the earnest money was not a condition precedent to the formation of the contract. Nor was
its failure to comply with the provision a material breach. We overrule the point for the
following reasons.

 First, no one argues that the contract never came into existence because Limestone
failed to pay the earnest money. Indeed, all agree that the conduct of the parties resulted
in the formation of a binding agreement. Moreover, it was one of the terms of that binding
agreement which Sai Thong invoked to bar Limestone's demand for specific performance. 
And, logic dictates that it could not have invoked that provision if the contract never came
into existence.

 Second, the provision invoked by Sai Thong to defeat recovery by Limestone is
found at paragraph 12(c) of the original agreement and states: 

 If Purchaser shall not be in default hereunder and if Seller fails to
consummate this Agreement for any reason, . . . the Earnest Money and any
extension payment shall be immediately returned to Purchaser and
Purchaser shall have the right to either (i) terminate this Agreement or (ii)
enforce specific performance of Seller's obligation under this Agreement, as

 Purchaser's sole and exclusive remedies for Seller's default.


As can be seen, the contractual provision expressly addresses Limestone's right to specific
performance. So too does it condition invocation of that right upon two criteria. One is that
the Seller fails to perform while the other, and more important given the current dispute,
is that the Purchaser (Limestone) not be in default under the accord. Thus, irrespective
of whether or not the duty to pay the earnest money was a condition precedent to the
formation of the agreement, it constituted a potential condition precedent to the invocation
of the right to receive specific performance. Again, before Limestone could pursue that
right, it "shall not be in default" under the agreement. 

 Next, the trial court found that Limestone indeed was in default because it did not
pay the entire earnest money. No one disputes this. Instead, Limestone asserts that the
default or breach was not material, and cites authority stating that the breach must be
material before specific performance can be withheld. The two cases mentioned, Hudson
v. Wakefield, 645 S.W.2d 427 (Tex. 1983) and Cowman v. Allen Monuments, Inc., 500
S.W.2d 223 (Tex. Civ. App.--Texarkana 1973, no writ), do indicate that only a material
breach prevents one from pursuing specific performance. Hudson v. Wakefield, 645
S.W.2d at 430-431; Cowman v. Allen Monuments, Inc., 500 S.W.2d at 226. Yet, neither
involved an agreement that expressly addressed the right of specific performance; instead,
the courts were merely orating upon general equitable principles related to the remedy. 
This distinction is of import for parties to an agreement may contractually specify the
remedies available to redress its breach and, thereby, modify the legal and equitable
remedies generally applicable. See GT & MC, Inc. v. Texas City Refining, Inc., 822
S.W.2d 252, 256 (Tex. App.--Houston [1st Dist.] 1991, writ denied) (stating that parties to
a contract may agree on remedies for breach and that the agreed remedy is exclusive). 
And, that is what they did here. Again, they restricted Limestone's redress to two options,
and the one pertaining to specific performance required that the purchaser not be in
"default." 

 Next, in determining what the parties meant by "default," it is clear that we must
afford the word its plain, everyday meaning. See GT & MC, Inc. v. Texas City Refining,
Inc., 822 S.W.2d at 256 (requiring that language in a contract be afforded its plain,
grammatical meaning). And, at least one court has held that "in everyday usage" the term
can mean "'omission,' 'failure,' or even 'breach.'" Alaniz v. Yates Ford, Inc., 790 S.W.2d
38, 40 (Tex. App.--San Antonio 1990, no writ). This interpretation of the word comports
with that afforded it by the dictionary; there, it is defined as the "failure" to do an act. See
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 950 (1976). 
Moreover, appended to none of these definitions are words of qualification requiring a
certain measure or quantum of omission, failure, or breach before an omission, failure or
breach can be a default. 

 Thus, because the plain meaning of the word connotes a mere failure, omission, or
breach, we must read it in like vein when assessing what the parties meant by using it in
their agreement. (2) And, in so reading the term, we eschew attempt to affix words of
qualification or measure to it, such as substantial or material. In short, the parties omitted
words from the contract modifying the degree of default needed. Because they did, we
may not now incorporate them into the agreement and thereby change it. See Cross
Timbers Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26 (Tex. App.--Amarillo 2000, no pet.)
(stating that the parties to the contract are the masters of their words and that we may not
rewrite the contract to mean something that it does not because one party may now find
the agreement distasteful).

 Finally, and given our interpretation of "default," Limestone's failing or omitting to
pay the entire earnest money as required by the contract was and is a default. Simply put,
it did not perform an obligation required under the contract. Having so defaulted, the
purchaser did not satisfy one of the conditions prerequisite to the invocation of its
contractual right to specific performance. So, the trial court did not err in denying
Limestone that relief.

Sai Thong's Points


 Next, through four issues, Sai Thong contends that the trial court erred in awarding
Limestone damages and in denying it attorney's fees. We overrule them.

 Damages

 As to the matter of damages, they were improperly awarded, according to Sai
Thong, because 1) there was no or insufficient evidence to support them and 2) Limestone
did not plead for them. We disagree.

 In its judgment, the trial court expressly "ordered, adjudged and decreed that Sai
Thong . . . pay to Limestone . . . the sum of $25,000 as damages." In its findings of fact
and conclusions of law accompanying the award, the $25,000 was described as the sum
of earnest money that Limestone actually paid. That is, the trial court concluded that Sai
Thong also breached the agreement by failing to give Limestone 1) reasonable notice of
the end of the suit initiated by those who did not want development upon the parcel of land
and 2) opportunity to "tender the final earnest money before" repudiating the contract. 
Because Sai Thong failed in this regard, the trial court determined that ". . . Limestone's
request for equitable relief should be granted and Sai Thong must return . . . the last
earnest money payment in the amount of $25,000." So, while the trial court referred to the
$25,000 sum as "damages," it is clear that it was merely ordering the return of the earnest
money that had been paid. Furthermore, and upon our reading of the judgment as a
whole, we conclude that the trial court so ordered it because Sai Thong too breached the
agreement. See Stettner Clinic, Inc. v. Burns, 61 S.W.3d 16, 18-19 (Tex. App.--Amarillo
2000, no pet.) (holding that a judgment is construed like other written documents and that
the intent of the court is determined by viewing the document as a whole). Therefore, the
trial court implicitly invoked and applied the rule of law holding that a party to a contract
cannot enforce it unless he shows that he has performed the obligations imposed upon
him. Carr v. Norstok Bldg Sys., Inc., 767 S.W.2d 936, 939 (Tex. App.--Beaumont 1989,
no writ); Acme Pest Control Co. v. Youngman, 216 S.W.2d 259, 263 (Tex. Civ. App.--Waco
1948, no writ). Or, stated differently, one cannot enforce a contract he breached. See
Dobbins v Redden, 785 S.W.2d 377, 378 (Tex. 1990). And, while the rule is normally
applicable to dependent promises or indivisible contracts, Acme Pest Control Co. v.
Youngman, 216 S.W.2d at 263, Sai Thong does not assert that the agreement at issue
falls outside those categories. (3) Nor did Sai Thong proffer an issue expressly contesting
the determination that it also breached the contract. (4) So, there is some evidence
supporting the trial court's decision to order the return of the earnest money.

 Finally, that Limestone may not have expressly requested damages matters not. 
Again, Sai Thong was the party seeking to retain the earnest money deposit per the terms
of the contract. It was the one who expressly placed before the trial court the issue of who
was to keep it. Since Sai Thong was not entitled to the sum, the trial court was entitled to
order its return to the depositor. And, we find no injustice or wrong in that.

 Attorney's Fees

 Next, Sai Thong argues that the trial court erred in denying it attorney's fees. This
was so because it was a "prevailing party" under the contract. We again disagree for the
following reason.

 As evinced by its findings of fact and conclusions of law, the trial court held that
"[u]nder the circumstances of this matter, an award of attorney's fees pursuant to the
Texas Civil Practice and Remedies Code Section 37.009 would not be equitable or just." 
(Emphasis added). Sai Thong does not attack that specific finding on appeal. Instead, it
posits that it was entitled to recover attorney's fees under the terms of the contract, as
alleged in its live pleading against Limestone. Yet, recovery under the contract was not a
matter addressed by the trial court in its findings of fact and conclusions of law. Nor does
the record indicate that the matter of recovering fees under the contract, as opposed to the
statute, was a topic broached in any request for additional findings of fact or conclusions
of law. This is fatal since Sai Thong was obligated to request such additional findings and
conclusions to preserve its complaint for review. 

 Simply put, if a trial court's original findings do not address a ground of recovery or
a defense, then the party relying on that ground or defense must request additional
findings in proper form. Levine v. Maverick Cty. Water Control, 884 S.W.2d 790, 796 (Tex.
App.--San Antonio 1994, writ denied); Sears, Roebuck & Co. v. Nichols, 819 S.W.2d 900,
907-08 (Tex. App.--Houston [14th Dist.] 1991, writ denied); accord, Smith v. Smith, 22
S.W.3d 140, 150 (Tex. App--Houston [14th Dist.] 2000, no pet.) (noting that Mr. Smith had
the duty to request additional findings of fact and conclusions of law in connection with the
disproportionate division of the community or in connection with the trial court's calculation
of the community portion). By failing to do so, one waives his complaint about the
unmentioned ground or defense. Smith v. Smith, 22 S.W.3d at 150; Sears, Roebuck & Co.
v. Nichols, 819 S.W.2d at 907-08. Given this, Sai Thong waived its contention that the trial
court erred by not awarding it fees as a prevailing party under the contract, as opposed to
the statute.

 Having overruled all points of error or issues raised by all the parties, we affirm the
judgment of the trial court.


 Brian Quinn

 Justice

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code
Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Neither party argues that something other than what we have held the definition to be was intended.
3. This is significant because we rebuttably presume that all stipulations in a contract are dependent. 
Acme Pest Control Co. v. Youngman, 216 S.W.2d 259, 263 (Tex. Civ. App.--Waco 1948, no writ).
4. Sai Thong does state under point four that "these conclusions [i.e. the finding that Sai Thong 
breached the agreement and was not entitled to attorney's fees under §37.009 of the Texas Civil Practice and
Remedies Code] were inappropriate in light of the Contract. . . ." It also asserts that they "were not supported
by the evidence." Nevertheless, neither explanation nor citation to authority accompanied these conclusions. 
Thus, they preserved nothing for review. Tex. R. App. P. 38.1(h); In re Williams, 998 S.W.2d 724, 730 (Tex.
App.--Amarillo 1999, no pet.).


n examining the record for proof of counsel's motivation, we find none. In
evaluating whether certain actions by trial counsel themselves, without separate proof of
motives of trial counsel in taking the actions, prove counsel ineffective, this record does
not contain such actions. We must consider the totality of the representation and the
particular circumstances of the case in evaluating the effectiveness of counsel. See Ex
parte Felton, 815 S.W.2d at 735. In doing so as to appellant's trial counsel, we begin with
appellant's brief. In the brief, appellant's able appellate counsel acknowledges (even
without separate proof of motive, see Jackson, 877 S.W.2d at 771) that trial counsel had
a facially sound trial strategy, and acted consistently with that strategy. The allegation of
ineffectiveness is based on the conclusion, looking back on the trial, that trial counsel so
poorly executed the "facially sound" strategy as to have failed to function as effective
counsel by going too far and introducing an exhibit outlining the extraneous offenses,
crimes, wrongs and bad acts which the State had disclosed to counsel over a week before
trial, failing to object to testimony that appellant had at one time injured Landa's mother,
by calling a witness to testify that appellant acted properly around her grandchildren and
in her house, and by failing to object to one piece of hearsay evidence concerning a
doctor's diagnosis that appellant did not suffer epilepsy, as he claimed he did. 

 The record reflects that trial counsel was faced with a not untypical choice: how to
defend against several seemingly credible witnesses who testified that the defendant did
what the State charged. In this case, the State presented testimony of Heying, who was
effectively a stranger to appellant with no apparent motive to fabricate testimony,
appellant's cousin Landa, and two law enforcement officers. The testimony of those
witnesses was unequivocal and consistent. The record evidences no witness to the
incidents (other than appellant) who would reasonably have contradicted the State's
witnesses. Heying's husband Randy was a witness to some of the incident, but he was
angry at appellant for allegedly harassing Heying. Deputy Laws did not testify, but the
record contains no inference that he would have testified adversely to Edwards and Bell. 
That left, as is so many times the situation, the defendant. If appellant did not testify
differently from the State's witnesses, there was no need to have him testify. If appellant
testified and contradicted the State's witnesses, as he did, he was going to be impeached
by the State with a great deal, if not all, of the evidence about which appellant makes
complaint. Appellant's counsel introduced the impeachment evidence on direct
examination of appellant and was thus able to allow appellant to explain the extraneous
crimes and bad acts in his own way, without being under the pressure of impeachment
cross-examination by what the record shows to have been a well-prepared and able district
attorney. 

 Landa's non-responsive testimony on cross-examination by appellant's counsel, to
the effect that her mother had previously had difficulties with appellant, opened the door
through which the State was able to elicit the specifics of the problems. Even if we assume
that admission of such testimony was due to errors by counsel, however, in light of the
evidence against appellant, such testimony, as well as the testimony that a doctor
diagnosed appellant as not having epilepsy, and the rebuttal testimony complained of as
being brought about by counsel's placing appellant's character in question, do not prove
to a reasonable probability that the result of the proceeding would have been different. 
The complained of errors, given this record, are not sufficient to undermine confidence in
the outcome. Hernandez, 726 S.W.2d at 55. 

 We conclude that under this record, appellant has not met the burden of proving
that counsel was ineffective and that appellant was prejudiced by the matters complained
of. See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064-66, 2068; Hernandez, 726 S.W.2d
at 55, 57. We overrule appellant's sole issue. The judgment of the trial court is affirmed.


 Phil Johnson

 Justice


Do not publish.