

# NUMBER 13-13-00015-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ACTION BAIL BONDS,**
**JOHN DUMAS, AND**
**STEVE PARKS,** Appellants,

**v.**

**YOLANDA VELA,** Appellee.

---

### On appeal from the County Court at Law
### of San Patricio County, Texas.

---

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Garza and Perkes
## Memorandum Opinion by Chief Justice Valdez

By three issues,[1] which we address as two issues, appellants, Action Bail Bonds,

John Dumas, and Steve Parks, challenge the trial court's grant of the traditional and no-

---

[1] In the issues section of their brief, appellants also list as issues, "The court erred in releasing disputed funds to the Plaintiff without requiring a bond" and "The court erred in denying Defendant's Motion for New Trial." Appellants do not address these issues in the arguments section of their brief or cite any authority regarding an order to release funds or a motion for new trial. These issues are

evidence motion for summary judgment in favor of appellee plaintiff Yolanda Vela. We affirm.

## I. BACKGROUND

On January 25, 2007, Ivette Vela was arrested on the charge of money-laundering. She executed a bail bond agreement with Action Bail Bonds (Action) to provide a $75,000 bond for her case. Ivette paid a fee of $8,000, and her aunt, Yolanda, entered into a collateral agreement whereby she put up $35,000 as collateral for Ivette's bond. The agreement stated as follows:

> I, Yolanda Vela, understand that I am giving to Action Bail Bonds a cashier's check and/or money order in the amount of $35,000. I am under the understanding that these monies are to be held as collateral for the bond of Ivette Corina Vela ($75,000 money laundering). Should Ivette Corina Vela not follow the conditions of bond that Action Bail Bonds has set forth which includes failure to appear in court, I understand that Action Bail Bonds will not return any monies to me in the event bonding conditions are broken. I also understand should no bonding conditions be broken the monies will be returned when to [sic] when Action Bail Bonds has received the final disposition from the court regarding the above case of Ivette Corina Vela.

The agreement was signed and notarized on January 27, 2007.

In letters dated December 22, 2010 and January 20, 2011, Yolanda's attorney demanded the return of the $35,000 dollars posted as collateral for the bond. The letters stated, "enclosed herewith please find a copy of the Dismissal and Discharge from Prosecution. . . ." Subsequently, Yolanda filed suit to recover the $35,000 she paid as collateral, claiming that appellants breached the collateral agreement by failing to return the $35,000. In response, appellants filed an answer and, later, an amended

therefore inadequately briefed, and we will not address them. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

answer and counterclaim arguing (1) "the affirmative plea of breach of contract in that the terms of the bond were not complied with"[2] and (2) Ivette was "still liable on the bond until there is a final adjudication on the [Ivette's] underlying criminal case. . . ." The motion further asserted:

1)    [Appellants] believe[] that Plaintiff/Counter Defendant is partly or solely responsible for some or all of her damages;

2)    Plaintiff's case is based on the use of funds provided by Plaintiff to guarantee the appearance and compliance of [Ivette] for the issuance of a bond issued by [appellants];

3)    The written terms of the bond and collateral agreement were not complied with by Ivette;

4)    This case was brought in bad faith and if [sic] frivolous in that the criminal case has not had a final adjudication;

5)    [Appellants] are still liable for the full amount of the bond should the State wish to pursue a case against Ivette. . . .

Yolanda then filed a traditional and no-evidence motion for summary judgment contending that she was entitled to the return of the collateral because she had established her claim as a matter of law. The no-evidence portion of her motion was included to force appellants to provide evidence of its breach of contract claim in order to survive summary judgment.

Along with her summary judgment motion, Yolanda presented a "Dismissal and Discharge from Prosecution" signed by Patrick L. Flanigan, the District Attorney for the 36th Judicial District, and dated August 27, 2009, wherein the State prayed that Ivette's

---

[2] In their pleadings, appellants assert breach of contract as an affirmative defense and as a counterclaim. Because, on appeal, both parties appear to address appellants' breach of contract claim only as an affirmative defense, we do the same. Additionally, appellants never actually present a counterclaim in their pleadings as they never claim that they are entitled to additional damages and only assert that they are entitled to keep the collateral in response to Yolanda's lawsuit. *See Aparicio v. Morgan*, 868 S.W.2d 16, 17 (Tex. App.—Corpus Christi 1993, no writ). In any event, as explained later in footnote 6, were we to address the breach of contract claim as a counterclaim, our analysis and holding would remain the same.

3

money laundering charge be "discharged and dismissed without prejudice." The document stated: "Investigation and latent print comparison not completed; insufficient evidence; in the Interest of Justice the state seeks dismissal." Yolanda also submitted a letter from Flanigan on his official letterhead stating,

> My records indicate that the charges were dismissed on or about August 27, 2009. In my conversation with the bondsman for Ms. Vela I have indicated that this case will not be prosecuted and I felt that there was no legitimate reason that the surety should not return any collateral that was still being held.

Additionally, Yolanda presented a screenshot from the San Patricio County website showing that no surety bond existed for Ivette and a master booking report from San Patricio County Sherriff's Department stating that Ivette's bond on her money-laundering charge had been dismissed on August 27, 2009.

On September 11, 2012, the trial court granted Yolanda's motion for summary judgment. On November 8, the trial court denied appellants' motion for a new trial, and on December 19, 2012, the trial court ordered appellants to release the collateral funds to Yolanda. This appeal ensued.

## II.    FINAL DISPOSITION IN IVETTE'S CASE

Appellants argue that the trial court erred by granting the traditional motion for summary judgment because no final disposition occurred in Ivette's case.

### A. Standard of Review and Applicable Law

In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). If the movant meets its burden, the burden shifts to the non-movant to produce summary judgment evidence that raises a fact

4

issue. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). We review the granting of a traditional motion for summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.*

To prevail on a breach of contract claim, a plaintiff must show that (1) a valid contract existed, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *Keszler v. Mem'l Med. Ctr. of E. Tex.,* 105 S.W.3d 122, 128 (Tex. App.—Corpus Christi 2003, no pet.). Appellants specifically argue on appeal that they did not breach the contract by failing to return the collateral funds because there has not yet been a final disposition in Ivette's case. Our review of this argument turns solely on whether, under the collateral agreement, a "final disposition" in Ivette's case occurred as a matter of law.

There is no global definition of "final disposition," and the phrase is not defined by the code of criminal procedure. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). We determine the meaning of the term final disposition based on the context of the collateral agreement, which was in support of Ivette's bond agreement. *Id.* ("Before addressing the meaning of the phrase 'final disposition,' contained in § 4(a), we must accurately characterize the nature of the disposition in the present case."). Under Texas Occupations Code section 1704.208, "(a) [a] person executing a bail bond is

5

relieved of liability on the bond on the date of disposition of the case for which the bond is executed. (b) *For purposes of this section, disposition of a case occurs on the date the case is dismissed or the principal is acquitted or convicted."* TEX. OCC. CODE ANN. § 1704.208 (West 2004) (emphasis added).

## B. Discussion

Appellants argue that there was no final disposition in this case because "no judge has ever signed a dismissal [sic] therefore the bond is still active until there is a court order or the Statute of Limitations runs on January 25 2014." We disagree.

Yolanda presented evidence establishing that the case was dismissed and that therefore a final disposition occurred. *See id.* Yolanda entered into the collateral agreement in order to support Ivette's bond. In her summary judgment motion, she submitted evidence in the form of a dismissal and discharge from the prosecutor in Ivette's case, a letter from the prosecutor stating that according to his records the case had been dismissed, and a master booking report and screenshot from the county sheriff's department website showing that the case had been dismissed and that there was no active bond for Ivette. Under Texas law, "[t]he attorney representing the State may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal, which shall be incorporated in the judgment of dismissal. No case shall be dismissed without the consent of the presiding judge." TEX. CODE CRIM. PROC. ANN. art. 32.02 (West 2006). Viewing the evidence in the light most favorable to appellants, but also considering that in this case there was no evidence that Ivette was ever indicted, we hold that the evidence presented, showing that the prosecutor dismissed the case, that

6

his records showed it was dismissed, and that there was no active bond, is enough to establish that a dismissal occurred as a matter of law, even without recorded evidence of a judge signing a dismissal order or granting permission to dismiss the case. *See Mann Frankfort Stein & Lipp Advisors, Inc,* 289 S.W.3d 844, 848 (Tex. 2009) (providing that appellate courts review the evidence in a summary judgment in the light most favorable to the non-movant).

When the case was dismissed, a final disposition occurred regardless of when the statute of limitations expires, and Action had no remaining or potential liability on a bond for Ivette. *See* TEX. OCC. CODE ANN. § 1704.208. Appellants presented no evidence refuting Yolanda's evidence that the case was dismissed and have never argued that Action has paid or owes money on an active bond for Ivette.[3] *See Rhone–Poulenc, Inc.*, 997 S.W.2d at 222. Accordingly, Yolanda satisfied her summary judgment burden by providing evidence that she presented appellants with a final disposition from the court and that appellants therefore breached the collateral agreement by not returning the $35,000. *See* TEX. R. CIV. P. 166a(c).

We overrule appellants' issue regarding the final disposition of Ivette's criminal case.

### III. APPELLANTS' DEFENSE THAT IVETTE FAILED TO FOLLOW BOND CONDITIONS

In their remaining issue, appellants argue that the trial court erred by granting Yolanda's motion for summary judgment because they presented at least a scintilla of evidence that a breach of contract occurred when Ivette failed to follow conditions of her

---

[3] At the hearing on its motion for new trial, the judge asked appellants' counsel, "Your client is not liable on the bond anymore. As a result of my ruling, are you still alleging that they are still liable on the $75,000 bond?" Appellants' counsel responded, "Your Honor, it is—if the—it is, potentially. It has potential they are still liable on that bond."

7

bail bond agreement, which they argue relieves them of their responsibility to return the collateral.  We disagree.

### A.  Standard of Review

A no-evidence summary judgment motion should be granted if there is no evidence of at least one essential element of the non-movant's claim.  *See Hamilton v. Wilson,* 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).  Under the no-evidence summary judgment rule, a party may move for summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or a defense on which the non-movant would have the burden of proof at trial.  TEX. R. CIV. P. 166a(i).  The respondent has the initial burden to present sufficient evidence to defeat the no-evidence summary judgment motion. *See Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex. 2002).  All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element.  *Forbes, Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex. 2003).  The burden of producing evidence is entirely on the non-movant; if the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper.  TEX. R. CIV. P. 166a(i).

We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).  "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact."  *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.,*

8

650 S.W.2d 61, 63 (Tex.1983)). More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Id.* at 751 (citing *Merrell Dow Pharms., Inc.,* 953 S.W.2d at 711).

In a motion for summary judgment, a plaintiff may ignore an affirmative defense pleaded by the defendant. *Bauer v. Jasso,* 946 S.W.2d 552, 555−56 (Tex. App.—Corpus Christi 1997, no writ). However, as Yolanda has done in the present case, the plaintiff may force the defendant to prove its affirmative defense by filing a no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166a(i). To survive summary judgment based on an affirmative defense, the defendant must provide at least a scintilla of evidence to raise a fact issue on each element of its affirmative defense.[4] *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

## B. Applicable Law & Discussion

The collateral agreement between Action and Yolanda stated: "Should Ivette Corina Vela not follow the conditions of bond that Action Bail Bonds has set forth which includes failure to appear in court, I understand that Action Bail Bonds will not return any monies to me in the event bonding conditions are broken." In her motion for summary judgment, Yolanda asserted that, to prevail in their defense, appellants were

---

[4] In her motion for summary judgment, Yolanda challenged both the materiality and the existence of Ivette's alleged breach by arguing that appellants failed to provide evidence of the breach or show any damages or harm resulting from it. *Timpte Indus. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (recognizing the general rule that, in a no-evidence summary judgment motion, the movant has the burden of challenging the specific elements of the non-movant's claim). Regardless, in this case, Yolanda included the no-evidence portion in her summary judgment motion for the purpose of forcing appellants to provide evidence of their affirmative defense to survive Yolanda's traditional summary judgment claim. Yolanda would prevail in the case if the trial court granted her traditional motion. *See* TEX. R. CIV. P. 166a(i). It is the non-movant's burden to provide evidence of all elements of an affirmative defense to defeat a traditional motion for summary. *See id.*; *Via Net v. TIG Ins.*, 211 S.W.3d 310, 313 (Tex. 2006). Therefore, to survive Yolanda's motion for summary judgment, appellants needed to raise a fact issue on all elements of their affirmative defense even if Yolanda had not challenged all the elements in the no-evidence portion of her motion. *See* TEX. R. CIV. P. 166a(i); *Via Net*, 211 S.W.3d at 313.

9

required and failed to show that "there existed an outstanding liability on the surety bond posted by [appellants]," that the collateral agreement was breached, and that appellants suffered damages.

In their response to the no-evidence portion of Yolanda's motion for summary judgment, appellants argued that the collateral agreement had been breached because:[5]

1. Plaintiff became the indemnitor [sic] on the bond for [Ivette]. [Ivette] failed to phone in, inform [appellants] or [sic] her new addresses or provide [appellants] with her new phone numbers. All of these requirements are crucial to providing a bond successfully.

2. *Should the State decide to reinstate charges against [Ivette], [appellants] would be subject to the bond being forfeited because [Ivette] did not comply with the bond conditions.*

(Emphasis added).

Appellants attached to their response to the motions for summary judgment sworn affidavits from owners of Action, Steve Parks and Deana Reyes, stating:

Ivette did not call in, changed her phone number and changed her address without any notice whatsoever;

Our position is that Ivette is noncompliant with the terms and conditions of her bond;

Our position is that Ivette is in breach of the contractual agreement of her bond;

The Statute of Limitations on Ivette's charge does not run until January 2014 . . . .

On appeal, appellants argue that the trial court improperly granted the no-evidence motion because they presented at least a scintilla of evidence of their defense

---

[5] Yolanda argues that this evidence was not properly before the trial court because appellants' response to the motion for summary judgment was not timely filed. We assume, without deciding, that the trial court properly considered the evidence.

10

that a breach of contract occurred when Ivette violated conditions of her bond agreement. In their brief, appellants generally allege that summary judgment was improper because they created a question on the fact issue: "Was appellee in Breach of Contract on the bond because of Ivette's non[-]compliance?" Later in the brief, they contend that the actions of Ivette "violated the terms of the bond. The additional collateral for the bond was subject to being forfeited because of the violations and appellee was liable as well because she indemnified Ivette."

In appellants' pleadings, they asserted the "affirmative plea of breach of contract in that the terms of the bond were not complied with."[6] This breach of contract defense relies on the principle that a party is discharged from its contractual obligations based on the other party's material breach. *See Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 198 (Tex. 2004) (determining that a party was released from further contractual obligations when the other party materially breached). As stated in appellants' pleadings, this is an affirmative defense. *Id.* at 197 ("In their respective answers, both parties raised the other's material breach as an affirmative defense."); *City of The Colony v. N. Tex. Mun. Water Dist.,* 272 S.W.3d 699, 746 (Tex. App.—Fort Worth 2008, pet. dism'd) (holding that "the contention that a party to a contract is excused from performance because of a prior material breach by the other contracting

---

[6] Again, in their pleadings, appellants assert breach of contract as a defense and as a counterclaim. Because, on appeal, both parties appear to address appellants' breach of contract claim only as an affirmative defense, we do the same. Additionally, appellants never actually present a counterclaim in their pleadings as they never claim that they are entitled to additional damages and only assert that they are entitled to keep the collateral in response to Yolanda's lawsuit. *Aparicio v. Morgan,* 868 S.W.2d 16, 17 (Tex. App.—Corpus Christi 1993, no writ). Regardless, to survive summary judgment on a breach of contract counterclaim appellants would still need to present a scintilla of evidence showing that a breach occurred and that they were damaged as a result of the breach. *See Keszler v. Mem'l Med. Ctr. of E. Tex.,* 105 S.W.3d 122, 128 (Tex. App.—Corpus Christi 2003, no pet.) Therefore, if we were to construe appellants' appeal as a challenge to the trial court's ruling on its counterclaim, our analysis of breach and materiality and our holding would remain the same.

party is an affirmative defense that must be affirmatively pleaded or it is waived" under Rule 94 of the Texas Rules of Civil Procedure). To prevail in its defense, the party asserting that a prior breach of contract occurred must show (1) that a breach occurred and (2) that the breach was material. *Mendez v. Allstate Prop. & Cas. Ins. Co.*, 231 S.W.3d 581, 586 (Tex. App.—Dallas 2007, no pet.) ("Having determined that Mendez's destruction of Allstate's subrogation rights constitutes a breach of contract, we examine whether Allstate established that the breach was material.").

### 1. Material Breach

Appellants cannot survive summary judgment based on their breach of contract defense because appellants provided no evidence showing that the alleged breach was material.[7] *Procter v. Foxmeyer Drug Co.,* 884 S.W.2d 853, 862 (Tex. App.—Dallas 1994, no writ) (finding that summary judgment was appropriate because "any fact issue on breach of a void option would not be *material"* as a matter of law) (emphasis included)*; see also Fedgess Shopping Ctrs., Ltd. v. MNC SSP, Inc.*, No. 14-07-00211-

---

[7] Texas courts have adopted the factors set forth in the Restatement (Second) of Contracts for determining the materiality of a breach:

   (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

   (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

   (3) the extent to which the party failing to perform or to offer performance will suffer forfeiture;

   (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

   (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Mustang Pipeline Co., v. Driver Pipeline Co.,* 134 S.W.3d 195, 199 (Tex. 2004); RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981).

12

CV, 2007 WL 4387337, at **2−3 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that summary judgment was appropriate because the defendant failed to prove the existence of a fact issue on the question of the materiality of a prior breach). As we have held that Ivette's case was dismissed and appellants are no longer liable on the bond, appellants cannot show that they were or could be deprived of an expected benefit of the collateral agreement by Ivette's failure to report an address change and call in to their office.[8]

Appellants made the importance of their ultimate liability on the bond abundantly clear in their response to the motion for summary judgment, premising their assertion that Ivette's alleged breach entitled them to keep the collateral on the possibility that "the State [may] decide to reinstate charges against [Ivette], [and appellants] would be subject to the bond being forfeited because [Ivette] did not comply with the bond conditions." Appellants provided no evidence of any other harm resulting from the alleged breach. Therefore, appellants' liability on the bond is essential to their material breach of contract defense. Because there has been a final disposition in Ivette's case, there is no remaining or potential liability on a bond for Ivette, and appellants were not

---

[8] In their pleadings, brief and affidavits responding to Yolanda's motion for summary judgment, and appellate brief, appellants argue that they are entitled to keep the collateral based on a prior breach of the collateral agreement. Appellants never claim and cite no case law supporting that forfeiture was a liquidated damage based on the condition of Ivette's compliance with the bond; nor did appellants raise this argument to the trial court. We therefore do not directly address the possibility that Ivette's non-compliance with the bond was a failure of a condition of the collateral agreement requiring forfeiture of the collateral. *See* Tex. R. App. P. 38.1(i). However, we note that forfeiture of collateral is very similar to forfeiture of a deposit or earnest money, which has been considered as a contract penalty and is only enforced if the breach or non-compliance is material. *Hudson v. Wakefield*, 645 S.W.2d 427, 431 (Tex. 1983). Therefore, under any potential defensive theory, to survive summary judgment, appellants would be required to show a scintilla of evidence that they were materially deprived of an expected benefit of the collateral agreement. *See id.*

deprived of the benefit of the collateral agreement or the bail bond agreement. *See* TEX. OCC. CODE ANN. § 1704.208.

Appellants executed the collateral agreement to secure any payment they may have made on Ivette's bond and to secure their potential future liability on the bond. Appellants' expected benefit from the collateral agreement was that they would be protected from liability on the bond; after the dismissal, they are no longer liable and cannot be liable on a bond for Ivette's case; therefore, they received the full expected benefit of the collateral agreement. *See* TEX. OCC. CODE ANN. § 1704.208; *Mustang Pipeline Co.*, 134 S.W.3d at 199; RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981). Furthermore, appellants required conditions in Ivette's bond agreement in order to ensure that the bond was not forfeited. Again, because appellants were not and cannot be held liable on the bond, appellants also obtained the full expected benefit from the conditions that were part of the bond agreement. TEX. OCC. CODE ANN. § 1704.208; *Mustang Pipeline Co.*, 134 S.W.3d at 199; RESTATEMENT (SECOND) OF CONTRACTS § 241(a).

On appeal, appellants never specifically allege that Ivette's breach was material. However, in their brief, appellants do explain, "the additional collateral was subject to forfeit because of the noncompliance of Ivette. That was the whole purpose for writing a bond . . . . The risk of writing a bond for that large amount for a person who lives in the Rio Grande Valley required a substantial amount of additional collateral or no bond would have been written." We understand appellants' purpose for requiring collateral. It provided them protection in ensuring that Ivette would comply with conditions of the bond agreement so that appellants would not be liable for the bond if it were forfeited

14

and Ivette was nowhere to be found.  However, we have found that the State dismissed the charges against Ivette; appellants were not and can never be subject to the bond being forfeited; the purpose for the bail bond and collateral agreement no longer exists and any prior breach by Ivette in failing to report to Action did not and cannot affect appellants expected benefit from either contract; therefore, appellants have presented no evidence that Ivette or Yolanda committed a material breach of contract.  *See* TEX. OCC. CODE ANN. § 1704.208;  *Hamilton,* 249 S.W.3d at 426; *Mustang, Pipeline Co.*, 134 S.W.3d at 197.

### 2.  Evidence of a Breach

Moreover, appellants, at summary judgment, also failed to provide a scintilla of evidence that Ivette failed to follow conditions of her bond agreement.  A final disposition occurred in Ivette's case on August 27, 2009 when it was dismissed.  *See* TEX. OCC. CODE ANN. § 1704.208.  Therefore, Ivette could only have violated bond conditions before the case was dismissed while the bond was active, and to show a scintilla of evidence that she violated the conditions, it was the appellants' burden to provide evidence that any failure to contact them occurred before Ivette was relieved from liability on the bond.  *See* TEX. R. CIV. P. 166a(i).

As noted above, appellants premised all of their arguments on the contention that Ivette's bond is currently still active.  Appellants' summary judgment evidence does not indicate when Ivette changed her address and phone number or stopped contacting Action, and appellants have not provided even a scintilla of evidence that it occurred before Ivette's case was dismissed.  We hold that reasonable and fair minded people could not differ in the conclusion that there is no allegation, much less evidence,

15

supporting a claim that any failure to contact Action occurred in the requisite time-frame to constitute a breach of contract. *See King Ranch,* 118 S.W.3d. at 751 (citing *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). Accordingly, appellants failed to present evidence raising a fact issue that a breach occurred. *See id.* Because appellants did not provide a scintilla of evidence that there was a prior material breach, appellants are not entitled to keep the collateral on this basis, and the trial court properly granted Yolanda's motion for summary judgment. We overrule appellants' issue regarding their defense of breach of contract.

## IV. CONCLUSION

We affirm the trial court's order granting the motion for traditional and no-evidence summary judgment.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
19th day of December, 2013.

16