ACCEPTED
02-14-00401-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
5/25/2018 11:58 AM
DEBRA SPISAK
CLERK

## NO. 02-14-00401-CV

## IN THE COURT OF APPEALS FOR THE SECOND JUDICIAL DISTRICT OF TEXAS, FORT WORTH

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
05/25/2018 11:58:43 AM
DEBRA SPISAK
Clerk

### CIMCO REFRIGERATION, INC.,
Plaintiff—Appellant

v.

### BARTUSH SCHNITZIUS FOOD COMPANY,
Defendant—Appellee

On Appeal from Civil Action No. 2011-11002-16
in the 16th Judicial District Court of Denton County, Texas
The Honorable Sherry Shipman, Presiding

## MOTION OF CIMCO REFRIGERATION, INC. FOR EN BANC RECONSIDERATION

Patricia Hair
Texas Bar No. 08713500
PHELPS DUNBAR LLP
500 Dallas Street, Suite 1300
Houston, Texas 77002
(713) 626-1386 Telephone
(713) 626-1388 Fax
Patricia.hair@phelps.com

Blake A. Bailey
Texas State Bar No. 01514700
Christopher R. Jones
Texas State Bar No. 24070018
PHELPS DUNBAR LLP
115 Grand Avenue, Suite 222
Southlake, Texas 76092
(817) 488-3134 Telephone
(817) 488-3214 Fax
blake.bailey@phelps.com
chris.jones@phelps.com
ATTORNEYS FOR CIMCO
REFRIGERATION, INC.

PD.23767115.1

## MOTION FOR EN BANC RECONSIDERATION

APPELLANT CIMCO REFRIGERATION, INC. (Cimco) respectfully requests, pursuant to Rule 49.7 of the Texas Rules of Appellate Procedure, that the Court en banc reconsider the attached memorandum opinion on remand and judgment issued on April 26, 2018 (the Memorandum Opinion)(Attachment 1).

The Memorandum Opinion largely eviscerates the parol evidence rule and renders meaningless the merger clause included in a contract by allowing one party to modify an unambiguous written contract by the addition of oral terms that, in this instance, also contradict the written terms. The Memorandum Opinion conflicts with established precedent holding that a fully integrated and unambiguous written agreement may not be added to, varied or contradicted by parol evidence of prior negotiations or agreements. *See, e.g.,* Section 202.2, Tex. Bus. & Com Code Ann.; *First Bank v. Brumitt,* 519 S.W.3d 95, 111 (Tex. 2017) (admission of evidence a previous oral agreement adding a term to a subsequent written loan commitment letter violated the parol evidence rule); *Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.,* 352 S.W.3d 462, 475 (Tex. 2011) (supplementing the interpretation

- 1 -

of an unambiguous written insurance policy with parol evidence of pre-settlement negotiations is inappropriate); *Quintanilla v. West*, 534 S.W.3d 34, 48 (Tex. App.—San Antonio 2017, pet. filed) (where consideration in the form of debts to be discharged is specifically enumerated, parol evidence of an alleged side agreement contradicting the written terms is inadmissible); *Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13-166 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)(where written contract provides a specific, limited warranty against defects in materials and workmanship, previous oral agreements regarding other warranties are inadmissible).

The Memorandum Opinion relies upon parol evidence of a pre-contract discussion to create a performance requirement and a warranty that contradicts the written contract. The written contract required the sale of specific refrigeration equipment and excludes all warranties other than an express warranty against defects in manufacture or installation. The Memorandum Opinion then utilizes this parol evidence to impose a contractual term that the room would be a certain temperature after installation of the equipment, thus transforming the contract from the sale and installation of the specified

- 2 -

equipment, to a contract to provide environmental engineering, potentially remodeling the manufacturing facility, and re-structuring the operational aspects of the customer's business.

The Memorandum Opinion awards damages to a purchaser of refrigeration equipment in order to purchase additional equipment, a damage award that that the written contract expressly excludes contract by limiting the seller's liability to the cost of repair or replacement of purchased equipment.

The original memorandum opinion issued by the panel on November 25, 2015, was correct insofar as it awarded damages only to the unpaid seller, Cimco, and excluded an award of damages to the purchaser, Bartush Schnitzius Food Company (Bartush).

I. **Permitting parol evidence to add to the written contract a warranty or guaranty that the Bartush rooms would maintain a constant 35 degrees after installation conflicts with and contradicts the terms of the written contract and does not supplement it.**

The written contract (the Contract)) between Cimco and Bartush (P.Ex. 7, P.Ex.12 ) (Attachment 2) was complete in itself as it required only that Cimco sell and install specific refrigeration equipment and warrant that this equipment was free of manufacturing defects or

- 3 -

defects in installation. The Contract contained no warranty or guaranty that the Bartush refrigerated production rooms post-installation would be or remain at any particular temperature. The Contract contained a merger clause stating

> THIS QUOTATION/CONTRACT CONTAINS THE COMPLETE AGREEMENT BETWEEN THE PURCHASER AND THE VENDOR, AND SUPERSEDES ALL PRIOR ORAL OR WRITTEN REPRESENTATIONS, PROMISES, AGREEMENTS OR UNDERSTANDINGS WITH RESPECT TO THE SUBJECT MATTER HEREOF.

The Memorandum Opinion is in error by permitting, contrary to the terms of the Contract and established legal precedent, a casual oral statement made by the Bartush maintenance superintendent three months before the Contract was executed to vary the written and agreed terms of the Contract by adding a requirement/warranty that the refrigerated rooms would maintain a 35F degree temperature post-installation. Specifically, the Memorandum Opinion is in error in holding that a warranty concerning post installation temperatures was created by the precontract statement of a Bartush representative:

> Cimco's representative, Michael Winslow, testified that Bartush required the system to maintain a thirty-five degree temperature. This

- 4 -

PD.23767115.1

testimony was supported by Winslow's notes from the initial walkthrough, which were admitted as a trial exhibit.

Memorandum Opinion on Remand at 9-10. An oral warranty regarding a constant post installation temperature of the Bartush production rooms is in direct conflict with the terms of the Contract, which specifically limited in Paragraph 6 entitled WARRANTY the warranties that Cimco would provide:

> UNLESS OTHERWISE SPECIFIED IN THIS QUOTATION/CONTRACT, THE VENDOR WARRANTS THE GOODS AND INSTALLATION SOLD HEREUNDER AGAINST ORIGINAL DEFECTS IN MANUFACTURE AND WORKMANSHIP FOR A PERIOD OF ONE YEAR FROM COMPLETION AS DEFINED IN SECTION 9 OF THESE TERMS AND CONDITIONS. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, STATUTORY OR OTHERWISE, EXPRESS OR IMPLIED, INCLUDING FOR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

This unwritten requirement concerning the post-installation temperature of the Bartush production rooms is the only breach of the Contract that the Memorandum Opinion attributes to Cimco. Without the addition of a post-installation warranty, the trial record contains no evidence that Cimco breached the Contract.

PD.23767115.1

The reliance by the panel on the opinion in *Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Tex.*, 249 S.W.3d 480 (Tex. App.—Beaumont 2008, no pet.), to support the creation of an unwritten warranty is misplaced. In *Morgan Buildings*, the court found from evidence of the surrounding circumstances that "the written purchase agreement alone was not intended to be a complete and exclusive statement of all terms of the parties' agreement" and was therefore only partially integrated. *Id.* at 488. The *Morgan* court specifically noted that the parties had signed written specifications and a drawing that supplemented the written purchase agreement, demonstrating that the written purchase agreement did not represent the complete and exclusive terms of the agreement, thereby rendering the *Morgan* purchase agreement "partially integrated." Because the written purchase agreement was only "partially integrated," the Morgan court held that "evidence of <u>consistent</u> additional terms to explain or supplement the terms of the written agreement could be considered." *Id.* (Emphasis supplied).

The Memorandum Opinion does not cite nor does the trial record contain any evidence of any circumstance indicating that the Contract was not intended to be a complete and exclusive statement of the

- 6 -

parties' agreement. Unlike in *Morgan*, there were no specifications to which the written Cimco agreement referred and no ambiguous or omitted terms that needed clarification in order for Cimco to supply the refrigeration equipment Bartush ordered. While the height of the prefabricated building that Morgan Buildings constructed for the SPCA was necessary in order to fabricate the building, the constancy of the temperature of the Bartush rooms post-installation was not necessary in order for Cimco to supply and install the specific refrigeration equipment that was the subject of the Contract.

Adding to the Contract the additional term mandated by the Memorandum Opinion regarding post-installation room temperatures altered the nature of the Contract from an agreement to supply and install specific equipment to a contract requiring engineering and physical analysis, redesign, and modification of the manufacturing facility and an operational analysis of the facility.

*Morgan* is wholly distinguishable from the instant case in another very important aspect: the terms that were added by parol evidence to the Morgan Buildings purchase order were not in conflict with the terms of its written agreement. Here, the addition of a warranty as to

- 7 -

post-installation production room temperature is in direct conflict with the written terms that limit Cimco's warranty to repair or replacement of manufacturing or installation defects.

By holding that the addition by parol evidence of a post-installation room warranty merely supplemented the terms of the Contract, the Memorandum Opinion actually imposes on Cimco an obligation that conflicts with and contradicts the terms of the Contract

The trial testimony of Danny Rose, the Cimco district manager who prepared the proposal, explained that the post installation temperature of any room is not the responsibility of Cimco as it depends on factors beyond Cimco's control, such as the proper operation of the refrigeration equipment by Bartush, the amount of equipment and the number of people in the room, windows, doors, ventilation, as well as the insulation of the room and whether the room is opened to outside air, precluding it from agreeing to warrant or guarantee the post-installation temperatures. (3 RR 31-32).

The Contract required Cimco to provide specific refrigeration equipment and nothing more. Cimco did not undertake in supplying the equipment and in quoting the price of the equipment to guarantee

PD.23767115.1

that the Bartush rooms would be any specific temperature. If that had been a part of the agreement, Cimco would have been required to conduct an engineering and operational analysis of the building and the intended equipment and personnel to be present in the room and required Bartush to reconstruct and insulate its production rooms and operate the defrost system properly. The Contract does not call for engineering or design services or operational requirements or for Cimco to warrant conditions over which it had no control; the Contract calls only for the sale and installation of the specified equipment. Adding through parol evidence a requirement that a room maintain a certain temperature during food processing operations completely changes the nature of the Contract and imposes a warranty that conflicts with the express terms of the Contract.

II. **Awarding Bartush damages based upon the unwritten warranty contradicts the limitation of liability contained in the written contract.**

The Memorandum Opinion and Judgment is also in error in awarding Bartush damages in the amount of the "additional costs BARTUSH had to pay to add any necessary defrost system . . . ." This award conflicts with the limitation of liability in the Contract. Oral

PD.23767115.1

representations or warranties made before a written agreement that conflict with the a written limited warranty constitute inadmissible parol evidence that cannot form the basis of a damage award. *See, e.g., Baroid Equip., Inc. v. Odeco Drilling, Inc.,* 184 S.W.3d 1.

The only evidence of contract damages offered at trial by Bartush was the cost of purchasing from others equipment not included in the Contract that Bartush argued was necessary to maintain the 35F degree temperature but which did not repair or replace the Cimco equipment. (4 RR 107) The Bartush damages arose solely as a result of the parol warranty regarding post-installation room temperatures and conflicts with the limitation of liability provisions of the Contract:

> In respect of goods sold with installation, the Vendor's sole liability shall be to repair or replace, at the Vendor's option, any defective goods or parts thereof or any defective workmanship.
>
> . . . .
>
> THE FOREGOING CONSTITUTES THE PURCHASER'S EXCLUSIVE REMEDY AND THE VENDOR'S SOLE LIABLITY ARISING OUT OF THE DESIGN, MANUFACTURE, SALE, INSTALLATION, OR USE OF THE GOODS.
>
> . . . .

- 10 -

> The Vendor shall not be liable for any losses, injuries, expenses or damages, whether direct, indirect, special, incidental, consequential or punitive, arising out of the goods, or the installation, operation, or failure of operation of the goods or related systems even if caused by the Vendor's negligence.

The *Morgan Buildings* case illustrates how the damage award to Bartush constitutes error. In spite of finding that the written purchase agreement was only partially integrated making parol evidence admissible, the appellate court in *Morgan Buildngs* held to be enforceable the written limitation on damages that excluded incidental and consequential damages. As with the *Morgan Buildings* purchase agreement, the liability limitation in the Contract is in large conspicuous type and clearly visible and excludes any damages other than the cost to replace or repair the Cimco equipment.

In the instant case, the trial court erred in submitting over Cimco's objection (5 RR 64-67) Question No. 6 that asked the jury to consider as an element of contract damages "The additional costs BARTUSH had to pay to add any necessary defrost system", to which the jury answered "$168,000". The trial court refused to submit Cimco's tendered issue that named as a contract damage element "The cost to

- 11 -

repair or replace any defective goods or parts thereof or any defective workmanship." The Memorandum Opinion is in error not just in allowing parol evidence to create a warranty regarding a post-installation temperature, but also in utilizing the unwritten warranty to award Bartush damages contrary to the Contract, which limited Cimco's liability to repair or replacement of its equipment. The Memorandum Opinion awarded Bartush as contract damages the cost of equipment not sold under the Contract, equipment that was not necessary to repair or replace the Cimco equipment and equipment that constituted consequential damages that were specifically excluded by the Contract.

### III. The record contains no evidence that Cimco ever <u>agreed</u> to a contract term whereby it warranted the post-installation temperature of the Bartush rooms.

Even if the parol evidence rule and the contractual merger clause are held inapplicable to the unilateral statement by the Bartush maintenance superintendent concerning the post-installation temperatures of the Bartush production rooms, that statement in and of itself does not constitute an agreement between Bartush and Cimco.

- 12 -

The trial record contains no evidence the Cimco ever *agreed* to warrant the post-installation temperature of the Bartush rooms.

The Memorandum Opinion on page 9 cites only the October 22, 2010, notes of Michael Winslow, the Cimco account manager (PX 29), as the evidence of an agreement. Those notes were made during the an initial inspection of the Bartush facility in which Winslow merely recorded the statement of the Bartush maintenance superintendent that the Bartush packing room "needs to be 35F." This is the only mention of a 35 degree post-installation temperature before the written contract was agreed upon three months later and the equipment was completely installed.

Winslow's recording in his notes the statement of the Bartush maintenance superintendent does not and cannot constitute evidence that Cimco agreed to warrant the post installation temperature of the Bartush rooms. Winslow admitted that he never conveyed this request for a 35 degree post-installation temperature to Danny Rose, the Cimco district manager who prepared the proposal. (4 RR 15). Rose testified that he had never heard of the 35 degree requirement before the installation was complete and never gave any warranty or guarantee to

- 13 -

Bartush that the rooms would be a consistent 35 degrees. (3 RR 65) The evidence also demonstrated that Bartush's Pearson subsequently told the Cimco district manager that the rooms "needed to be 40-44°." (2 RR 81; P.Ex.3)

In order to prevent misunderstandings or assumptions that are not confirmed in writing, the Contract contained a merger clause to ensure that an oral statement during negotiations that is not included in a contract does not later become the fundamental purpose of the entire contract according to one party when the other party is not relying on the unwritten requirement.

Cimco was entitled to rely on this clause in order to know and appropriately price what its responsibilities were under the Contract and should not be bound by a pre-contract oral statement of which the Cimco management had no knowledge.

IV. **Admission of parol evidence of a 35 degree post-installation warranty was harmful error because without it there is no basis for finding that Cimco breached the Contract or that Bartush sustained any damage.**

The only evidence that the Memorandum Opinion identifies to support the jury's finding that Cimco breached the Contract is the oral

PD.23767115.1

statement made by the Bartush maintenance superintendent that the rooms needed to be 35 degrees and

> apart from the thirty-five degree temperature, there was evidence that the Cimco system did not function property by failing to maintain a sufficient cool temperature because the testimony supported that temperatures rose to the 50's and 60's.

Memorandum Opinion on Remand at p. 9-10. The record contains no evidence that Cimco provided any defective goods or defect in workmanship and no evidence concerning the cost to repair or replace Cimco's defective goods or workmanship, which are the only damages permitted by the Contract. To the contrary, even Bartush's expert testified that he found no evidence of a manufacturing or installation defect and that the newly purchased Bartush equipment did not replace but only supplemented the Cimco equipment. (4 RR 107)

At trial, much of the evidence focused on whether the Bartush rooms were or were not a constant 35 degree temperature and whether the temperature of the rooms was the result of circumstances beyond the control of Cimco, such as the improper operation of the equipment or the lack of insulation in the Bartush production rooms. However, the post-installation temperature of the Bartush rooms is not evidence of a

- 15 -

contract breach by Cimco because evidence violative of the parol evidence rule has no legal effect and is merely proof of immaterial and inoperative facts. *DeClaire v. G & B Mcintosh Family Ltd. P'ship*, 260 S.W.3d 34, 46 (Tex. App.—Houston [1st] 2008, no pet.); *Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d at 13. Without permitting parol evidence to add to the Contract an unwritten warranty concerning post-installation room temperature, evidence of room temperature constitutes nothing more than immaterial and inoperative facts.

In the absence of a post-installation temperature warranty, the record contains no evidence that Cimco breached the Contract or that Bartush suffered any damages resulting from a breach of the Contract. The admission of parol evidence that varied the Contract is unequivocally harmful as it forms the basis on which the Memorandum Opinion and Judgment awarded Bartush damages of $168,000, plus attorney's fees. Only by ignoring the limitations of liability and damages contained in the Contract and by permitting parol evidence to vary its terms can an award of damages to Bartush be sustained as the judgment in this case is based solely on Bartush's claim for breach of contract. Permitting the terms of the Contract to be varied by

- 16 -

Bartush's initial statement and to ignoring the damage limitations and exclusions contained in the Contract based upon that variance is contrary to all legal precedent.

### V. Cimco's objection to Question No. 2 and Question No. 3 preserved error as to the conditioning instruction on Question No. 24

If parol evidence is not permitted to vary the terms of the Contract by creating a warranty concerning post-installation room temperatures, the record contains no evidence that Cimco breached the Contract and no evidence that Bartush sustained any of the damages permitted by the Contract. At the close of the evidence, Cimco moved for a directed verdict on the basis of no evidence of a contract breach and no evidence of contract damages sustained by Bartush. (5 RR 98-99) Cimco specifically objected (5 R.R. 61-62, 64-67) to the submission of Questions No. 2, No. 3 and No. 6 and specifically cited to the court the testimony of Bartush's expert, Anthony Jacques, that all the equipment ordered was installed (4 RR 100), that there were no manufacturing or installation defects (4 RR 103), and that the Cimco equipment had sufficient capacity to cool the Bartush rooms (4 RR 99). The trial court overruled these objections.

PD.23767115.1

Nonetheless, they were sufficient to apprise the Court of Cimco's complaint that no evidence supported the submission of Bartush's defensive issues as all evidence demonstrated that Cimco had complied with all requirements of the Contract.

> There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.

*Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 226-27 (Tex. 2010) (*quoting State Dept. of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). Because Cimco's objections to Question No. 2, No. 3, and No. 6 apprised the trial court that Bartush had provided no evidence of a breach of the Contract by Cimco and no evidence of contract damages, they preserved error as to the impact that these issues had upon the erroneous conditioning instruction that the Court added to the issue regarding Cimco's attorney's fees.

> Once a party objects to the inclusion of invalid bases for liability in the charge, this objection also preserves error for any impact the wrongful inclusion has on other charge questions.

*McFarland v. Boisseau*, 365 S.W.3d 449, 454-55 (Tex. App—Houston[1st Dist.] 2011, no pet.) *citing Missouri Pacific R.R. Co. v. Limmer*, 180

- 18 -

S.W.3d 803 (Tex. App.–Houston [14th Dist.] 2005), *rev'd on other grounds*, 299 S.W.3d 78 (Tex. 2009); *see also Gonzales v Southwest Olshan Foundation Repair Co., LLC*, 400 S.W.3d 52 (Tex. 2013); *Schrock v. Sisco*, 229 S.W.3d 392 (Tex. App.—Eastland 2007, no pet.) Cimco's objection to Question Nos. 2 and 3 preserved error for the impact that the erroneous conditioning instruction had on Question No. 24 regarding attorney's fees.

Cimco preserved error as to the erroneous conditioning instruction in the same manner that this Court has recognized that the plaintiffs had preserved error in *Cunningham v. Haroona*, 382 S.W.3d 492, 508-09 (Tex. App.—Fort Worth 2012, pet. denied). In that case, even though the plaintiffs had not objected to an erroneous conditioning instruction, they were held to have preserved error by objecting to the issues upon which the conditioning instruction was based. This court noted that error was preserved because the "trial court clearly understood the [plaintiffs'] complaint and this is all that was required." *Id.* at 510.

The cases the court relied upon in the Memorandum Opinion on Remand are inapposite to the issue of error preservation under the circumstances of this case. Neither case involves "no evidence"

PD.23767115.1

objections to liability issues upon which a conditioning instruction is premised.

More specifically, in *Environmental Procedures, Inc. v. Guidry*, 282 S.W.3d 602 (Tex. App.—Houston [14th Dist.] 2009, pet. denied), the appellants were held to have waived a right to a new trial because they did not object to the conditioning instructions for jury issues concerning the principal issues of liability and damages, as opposed to a subsidiary issue of attorney's fees. Unlike the instant case, the trial evidence had not "conclusively proved liability and damages as to the [appellants' claims]. " *Id.* at 631. Because Cimco has been held to be entitled to recover damages for breach of contract, the trial court's conditional submission of its attorney's fees issue on the Bartush defense issues for which there was no evidence is error that was preserved by Cimco's objections. Cimco's award of contract damages mandates a remand to determine the amount of the statutory attorney's fees to which Cimco is entitled.

The decision in *Hunter v. Carter,* 476 S.W. 2d 41 (Tex. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.), is inapplicable because the appellant failed to object, unlike the instant case, to the errors in the

- 20 -

issues upon which the unanswered issues were conditioned. Moreover, the unanswered issues were immaterial as a result of the jury's answer to other issues. The opinion merely holds in accord with Rule 279 of the Texas Rules of Civil Procedure that issues omitted from submission to the jury may be deemed found so as to support a judgment if there is factually sufficient evidence to support the finding. *See Martin v. McKee Realtors*, 663 S.W.2d 446, 449 (Tex. 1984).

The reversal of the trial court's judgment and the award of contract damages to Cimco requires a remand for a determination of the reasonable amount of attorney's fees. In a case in which damages are awarded for breach of contract, Section 38.001 of the Civil Practice and Remedies Code mandates the award of attorney's fees where there has been proof of presentment and proof that the amount of the fees is reasonable. *See, e.g., Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009); *Stovall & Associates, P.C. v. Hibbs financial Center, Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.); *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 198 (Tex. App.—Fort Worth 2012, no pet.); *AMX Enterprises, LLP v. Master Realty Corp.*, 238 S.W.3d 506, 517 (Tex. App.—Fort Worth 2009, no

PD.23767115.1

pet.); *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App.—Fort Worth 1998, pet. denied). While a trial court does have discretion to determine the *amount* of attorney's fees, it has no discretion to deny attorney's fees entirely. *Smith*, 296 S.W.3d at 547; *Stovall & Associates, P.C.*, 409 S.W.3d at 803; *World Help*, 977 S.W.2d at 683.

> "Once a jury finds that a party should prevail on a claim on which attorney's fees are mandated, the only question remaining is the reasonable value of the attorney's fees, not whether they should be awarded."

*West v. Brenntag Southwest, Inc.*, 168 S.W.3d 327, 338 (Tex. App.—Texarkana 2005, no pet.). To recover the attorney's fees mandated by statute, it is necessary only that a party prevail in its claim for breach of contract and recover damages. *E.g, Green International, Inc. v. Solis*, 951 S.3d 384, 390 (Tex. 1997); *Woodhaven Partners, Ltd. v. Shamoun & Norman, LLP*, 422 S.W.3d 821, 838 (Tex. App.—Dallas 2014, no pet.). Only in cases in which there are no damages recovered for the breach of contract is the prevailing party not entitled to recover attorney's fees. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004); *Green International, Inc. v. Solis*, 951 S.3d 384, 390 (Tex. 1997).

- 22 -

The fact that the trial court erroneously conditioned the Cimco attorney's fee issue on Bartush's unsupported claim that Cimco had breached the Contract does not and should not deny Cimco its statutorily mandated attorney's fees when Cimco has recovered damages.

## VI.  Conclusion

The Memorandum Opinion on Remand should be reconsidered.  A unilateral oral statement by one party to a written contract complete in itself should never be permitted to contradict the written terms.. Unsupported by precedent and the evidence presented at trial, the Memorandum Opinion on Remand creates confusion in the law of contracts and in the market place where parties need to rely upon written terms to know their duties and obligations.

The Memorandum Opinion on Remand should be withdrawn and replaced with an opinion holding that parol evidence of a post-installation warranty is not admissible, that the record contains no evidence that Cimco breached the Contract or that Bartush sustained damages as a result of a breach by Cimco and that Cimco preserved error as to the conditioning instruction to its attorney's fees issue by

- 23 -

objecting to the issues upon which the conditioning instruction was based.

The original opinion of this court in which no damages were awarded to Bartush is correct as to that point. The Judgment issued on April 26, 2018, should be reformed to award damages only to Cimco and to remand the case to the trial court for a determination of amount of Cimco's attorney's fees.

PD.23767115.1

Respectfully submitted,

*/s/ Patricia Hair*
Patricia Hair
Texas Bar No. 08713500
PHELPS DUNBAR LLP
500 Dallas Street, Suite 1300
Houston, Texas 77002
(713) 626-1386 Telephone
(713) 626-1388 Fax
Patricia.hair@phelps.com

Blake A. Bailey
Texas State Bar No. 01514700
Christopher R. Jones
Texas State Bar No. 24070018
PHELPS DUNBAR LLP
115 Grand Avenue, Suite 222
Southlake, Texas 76092
(817) 488-3134 Telephone
(817) 488-3214  Fax
blake.bailey@phelps.com
chris.jones@phelps.com
ATTORNEYS FOR CIMCO
REFRIGERATION, INC.

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with the typeface requirement of Texas Rule of Appellate Procedure Rule 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes.  This document also complies with the word-count limitations of Texas Rule of Appellate Procedure Rule

9.4(i) because it contains 4492 words, excluding contents exempted by Texas Rule of Appellate Procedure Rule 9.4(i)(1).

/s/ Patricia Hair
Patricia Hair

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument and served upon all counsel as listed below by facsimile, electronically, and/or hand delivery on this 25th day of May, 2018, as follows:

Kevin J. Allen
Jones, Allen & Fuquay, L.L.P.
8828 Greenville Avenue
Dallas, Texas 75243
Telephone: (214) 343-7400
Fax: (214) 343-7455
kallen@jonesallen.com

Melissa A. Lorber
Enoch Kever PLLC
5918 W. Courtyard Dr., Suite 500
Austin, Texas 78730
Telephone: (512) 615-1200
Fax: (512) 615-1198
mlorber@enochkever.com

/s/ Patricia Hair
Patricia Hair

- 26 -



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00401-CV

CIMCO REFRIGERATION, INC.                                          APPELLANT

V.

BARTUSH-SCHNITZIUS FOODS                                          APPELLEE
CO.

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2011-11002-16

----------

## MEMORANDUM OPINION ON REMAND[1]

----------

## I. INTRODUCTION

This case is on remand from the Supreme Court of Texas after the court granted petitions for review filed by both Appellant Cimco Refrigeration, Inc. (Cimco) and Appellee Bartush-Schnitzius Foods Co. (Bartush), issued a per curiam opinion and a judgment reversing this court's judgment, and ordered our

----------

[1]See Tex. R. App. P. 47.4.



opinion published.[2] *See Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432 (Tex. 2017) (*Bartush II*). Holding that "neither the trial court nor the court of appeals properly effectuated the jury's verdict[,]" the supreme court directed us on remand to address the following issues that we did not reach in *Bartush I*: (1) "Cimco's alternative argument that the trial court's judgment should be reversed on the ground that no evidence supported the jury's finding that Cimco failed to comply with the parties' agreement"; (2) Cimco's argument that the parole-evidence rule bars enforcement of the disputed term regarding temperature; and (3) "whether Cimco's objection to Question 3 was sufficient to preserve error on Question 24."[3] *Id.* at 438 & n.3.

Because we hold that these issues lack merit but that we must give effect to the jury's damages awards to both parties as instructed by the supreme court,[4] we will reverse the trial court's judgment that Cimco take nothing, and remand for entry of a judgment that Cimco recover $113,400 from Bartush plus pre- and post-judgment interest and affirm the trial court's judgment that Bartush recover $168,079 from Cimco plus pre- and post-judgment interest and that Bartush recover from Cimco its attorney's fees in the amount of $165,000.

---

[2]*Cimco Refrigeration, Inc. v. Bartush-Schnitzius Foods Co.*, 518 S.W.3d 57 (Tex. App.—Fort Worth 2015, pet. granted) (*Bartush I*).

[3]We did not order new briefing from the parties on remand.

[4]*Bartush II*, 518 S.W.3d at 437 ("Bartush contends that the court [of appeals] should have given effect to the jury's damages awards to both parties. We agree.").

2

## II. Pertinent Background on Remand[5]

### A. The Dispute

Cimco, a refrigeration contractor, agreed to install a specific refrigeration system for Bartush, a food-product manufacturer. A dispute arose as to whether the system worked properly because it did not maintain a consistent thirty-five-degree temperature. *Bartush II*, 518 S.W.3d at 434. Bartush claimed that Cimco promised the system could maintain a consistent thirty-five-degree temperature, while Cimco contended that it made no enforceable promise regarding a consistent thirty-five-degree temperature. *Id.* Having already paid $306,758, Bartush refused to pay the remaining $113,400 owed to Cimco and instead spent an additional $168,079 to secure a system that could maintain a consistent thirty-five-degree temperature. *Id.*

### B. Proceedings in the Trial Court

Cimco filed suit against Bartush and brought a breach-of-contract claim for nonpayment. *Id.* Bartush filed a breach-of-contract counterclaim. *Id.* The claims were tried to a jury. *Id.* at 435. After the close of the trial, the court submitted breach-of-contract questions for both Cimco and Bartush. *Id.*

---

[5]The background facts of this case are set forth fully in *Bartush I*; we therefore set forth only an abbreviated version of the facts that are necessary to dispose of the remanded issues.

3

Question 1 regarding Bartush's alleged breach of contract asked, "Did BARTUSH fail to comply with the agreement to purchase the refrigeration equipment and services for The Facility?"

Question 2 regarding Cimco's alleged breach of contract asked,

> Did CIMCO fail to comply with the agreement to provide the refrigeration equipment and services to [Bartush]?
>
> You are instructed that CIMCO is required to perform its services under the contract in a good and workmanlike manner.
>
> A good and workman like manner is that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.

The court's charge defined "agreement" as "the written documents reflecting the agreement of the parties, together with any additional terms that supplement the written documents." Notably, Question 2 did not predicate any breach-of-contract finding on the thirty-five-degree-temperature requirement.

Question 3 asked,

> If you answered "Yes" to both Question No. 1 and Question No. 2, then answer Question No. 3. Otherwise, do not answer the following question.
>
> Who failed to comply with the agreement first?
>
> Answer "CIMCO" or "BARTUSH".

Question 4 asked, "If you answered "Yes" to Question No. 1, then answer Question No. 4. Otherwise, do not answer the following question. Was BARTUSH's failure to comply excused?" In determining whether Bartush's

4

breach was excused, the trial court instructed the jury in Question 4 to evaluate the materiality of Cimco's breach under the *Mustang Pipeline*[6] factors.

Cimco also submitted Question 24 for recovery of its attorney's fees. In submitting Question 24, Cimco included the following conditioning instructions: "If you have answered "Yes" to Question No. 1, "BARTUSH" to Question No. 3, and "No" to Question No. 4, then answer the following Question. Otherwise, do not answer the following question." Question 23, Bartush's attorney's-fees question, did not include the same conditioning instruction.

The jury found that both parties breached the contract, that Cimco breached first, and that Bartush's breach was not excused.[7] *Id.* at 435. Because the jury found that Cimco breached first when it answered Question 3, the jury did not answer Question 24, thus not awarding attorney's fees to Cimco. *Id.* Despite the jury's awards to both parties, the trial court entered a judgment solely in favor of Bartush for its damages and attorney's fees. *Id.*

### C. Proceedings in the Court of Appeals—*Bartush I*

In *Bartush I*, we reversed the trial court's judgment that Cimco take nothing (despite the jury's award of $113,400 to Cimco) and reversed the trial court's judgment that Bartush recover from Cimco $168,079 from Cimco plus pre- and

---

[6]*Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004).

[7]The jury's finding that Bartush's breach was not excused constituted an implied finding that Cimco's first-occurring breach was not material. *Bartush II*, 518 S.W.3d at 435.

post-judgment interest and attorney's fees in the amount of $165,000. We remanded the case to the trial court for entry of judgment solely in favor of Cimco because of the jury's implied finding that Cimco's breach was not material, which we held rendered irrelevant the jury's finding that Cimco breached first and precluded Bartush's recovery. *Bartush I*, 518 S.W.3d at 62. We held, however, that Cimco failed to preserve any error in the jury's failure to answer Cimco's attorney's fees question because Cimco did not object to the conditional submission of its attorney's fees question. *Id.* at 62 n.9. For this reason, and because Cimco did not raise an issue challenging attorney's fees, we declined to remand the issue of Cimco's attorney's fees to the trial court. *Id.*

### D. Proceedings in the Texas Supreme Court—*Bartush II*

Both parties filed petitions for review with the supreme court. *Bartush II*, 518 S.W.3d at 435. Bartush asserted that despite the jury's implied finding that Cimco's breach was not material, the breach by Cimco constituted a material breach as a matter of law. *Id.* at 435–36. In rejecting Bartush's argument, the supreme court noted that "[g]enerally, materiality is an issue 'to be determined by the trier of facts'" and may "be decided as a matter of law only if reasonable jurors could reach only one verdict." *Id.* at 436 (quoting *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983)). The supreme court explained that in this case, the evidence concerning the materiality of Cimco's breach was not such that it enabled the jurors to reach only one verdict. *Id.* The supreme court further explained:

6

> The parties presented trial evidence that could have led the jurors to reasonably disagree regarding the application of these [*Mustang Pipeline*] factors, including conflicting evidence on the parties' communications regarding temperature requirements.

*Id.* at 437. Consequently, the supreme court held that the evidence supported the jury's finding that Cimco's breach was not material:

> No such conclusive evidence of materiality [of Cimco's breach] exists in this case. Because reasonable jurors could have disagreed on whether Cimco breached a material obligation, we may not overrule the jury's implied finding on that issue.

*Id.* The supreme court then agreed with Bartush's alternative contention that we should have given effect to the jury's damages awards to both parties, explaining that

> the jury's findings that Cimco failed to comply with the agreement first and that its failure to comply was not material mean that (1) Bartush remained liable for its subsequent failure to comply, but (2) Bartush's claim for damages caused by Cimco's prior breach remained viable. Cimco had a preexisting duty to perform under the contract, and the jury found that Cimco violated that duty *before* Bartush breached by withholding payment.

*Id.* at 437–38 (citations and footnote omitted).

Thus, the supreme court affirmed the jury's finding that Cimco breached the agreement first (Question 3) and agreed with our conclusion that the jury made an implied finding that Cimco's breach was not material because of the jury's finding that Cimco's breach did not excuse Bartush's performance (Question 4). The supreme court, however, reversed our judgment that Bartush's *subsequent* material breach precluded Bartush from recovering for Cimco's *prior* nonmaterial breach. Because Cimco had three remaining

7

unaddressed issues challenging the jury's finding in favor of Bartush, the supreme court remanded this case to us.

### III. CIMCO'S NO-EVIDENCE CHALLENGES TO QUESTION 2

In the first remanded issue, Cimco argued that the trial court's judgment should be reversed on the ground that no evidence supported the jury's finding in Question 2 that Cimco failed to comply with the parties' agreement to provide a refrigeration system. In the second remanded issue, Cimco argued that no evidence supported the jury's finding in Question 2 that Cimco failed to comply with the agreement because any evidence of a thirty-five-degree-temperature requirement was barred by the parol-evidence rule.

#### A. Standard of Review

In determining whether there is legally sufficient evidence to support a finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support a finding, and more than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 77 S.W.3d 253, 262 (Tex. 2002). Direct evidence of a vital fact defeats a legal-sufficiency challenge. *See Serv. Corp. Int'l v. Guerra*, 348

8

S.W.3d 221, 228 (Tex. 2011). In circumstances where a reasonable jury could resolve conflicting evidence either way, we presume the jury did so in favor of the prevailing party. *Thota v. Young*, 366 S.W.3d 678, 696 (Tex. 2012).

## B. Analysis

### 1. Some evidence supports the jury's finding

Regarding the first remanded issue, the supreme court gave us guidance in its opinion. In rejecting Bartush's contention that Cimco's breach was material as a matter of law, the supreme court explained,

> The parties presented trial evidence that could have led the jurors to reasonably disagree regarding the application of these [*Mustang Pipeline*] factors, including conflicting evidence on the parties' communications regarding temperature requirements. . . . Because *reasonable jurors could have disagreed on whether Cimco breached a material obligation,* we may not overrule the jury's implied finding on that issue.

*Bartush II*, 518 S.W.3d at 437 (emphasis added).

We have thoroughly reviewed the evidence presented at trial and viewing all evidence favorable to the jury's finding, we conclude, as did the supreme court, that there was some evidence to support the finding in Question 2 that Cimco breached the agreement. Cimco's representative, Michael Winslow, testified that Bartush required the system to maintain a thirty-five-degree temperature. This testimony was supported by Winslow's notes from the initial walkthrough, which were admitted as a trial exhibit. And, apart from the thirty-five-degree temperature, there was evidence that the Cimco system did not

9

function properly by failing to maintain a sufficient cool temperature because the testimony supported that temperatures rose to the 50s and 60s.[8]

Because conflicting evidence exists concerning whether Cimco failed to comply with the agreement and because the jury could have reasonably so concluded, we presume that the jury resolved this conflicting evidence in favor of Bartush. *See Thota,* 366 S.W.3d at 696. Viewed in the light most favorable to the jury's findings, deferring to the jury's reasonable resolution of conflicting evidence, more than a scintilla of evidence exists enabling a reasonable factfinder to conclude that Cimco failed to comply with the agreement. *See United Servs. Auto. Ass'n v. Croft,* 175 S.W.3d 457, 467 (Tex. App.—Dallas 2005, no pet.) (holding that testimony of breach was legally sufficient to affirm trial court's breach-of-contract finding). We overrule the first issue on remand.

### 2. The parol-evidence rule does not bar evidence of the thirty-five-degree-temperature requirement

In the second issue on remand, Cimco claims that no evidence supports the jury's finding that it failed to comply with the parties' agreement because any evidence of a thirty-five-degree-temperature requirement was barred by the parol-evidence rule.

---

[8]In rejecting Bartush's contention that Cimco's prior breach was a material breach as a matter of law, the supreme court recognized the "conflicting evidence on the parties' communications regarding temperature requirements" that existed; this same conflicting evidence constitutes some evidence that Cimco did breach the parties' agreement concerning temperature requirements. This evidence is likewise dispositive of all Cimco's sufficiency complaints.

10

To the extent the jury relied on the alleged parol evidence concerning the thirty-five-degree-temperature requirement that Cimco complains of, that evidence was admissible because it explained and supplemented the parties' partially integrated agreement, which was silent as to a temperature requirement. *See Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Tex.*, 249 S.W.3d 480, 488 (Tex. App.—Beaumont 2008, no pet.) (holding that parol evidence regarding design of the building to be constructed was admissible even though contract contained a merger clause because parole evidence supplemented the written contract); *see also Sanders v. Future Com, Ltd.*, No. 02-15-00077-CV, 2017 WL 2180706, at *4 (Tex. App.—Fort Worth May 18, 2017, no pet.).

We also note that although the jury found that Cimco had failed to comply with "the agreement to provide the refrigeration equipment and services," the finding was not predicated on the system's failure to maintain a thirty-five-degree temperature because no question was submitted to the jury regarding the thirty-five-degree-temperature requirement. Thus, even if evidence concerning the thirty-five-degree-temperature requirement was barred by the parol-evidence rule and improperly admitted, it is not a ground for reversal. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) ("Even if the trial court abused its discretion in admitting certain evidence, reversal is only appropriate if the error was harmful, *i.e.*, it probably resulted in an improper judgment.").

Therefore, we overrule the second remanded issue.

11

## IV. CIMCO'S OBJECTION TO QUESTION 3 DID NOT PRESERVE CIMCO'S ASSERTED ERROR AS TO QUESTION 24

In the third remanded issue, Cimco argued that although it did not object to Question 24, which conditionally submitted the issue of Cimco's attorney's fees, its objection to Question 3 adequately preserved any error in Question 24. Cimco contends that an objection to a question with an invalid basis for liability preserves error for any impact the wrongful inclusion has on other charge questions.

### A. Law on Error Preservation

The fundamental premise underlying error preservation is that the party seeking to preserve an alleged error must take some action to apprise the trial court of the alleged error in a way that provides the trial court with the opportunity to correct it. *See* Tex. R. App. P. 33.1(a) (preservation requires either a ruling or a refusal to rule); *Burbage v. Burbage*, 447 S.W.3d 249, 257 (Tex. 2014) ("[T]he objection must apprise the trial court of the error alleged such that the court has the opportunity to correct the problem."); *see also Thota*, 366 S.W.3d at 691. "There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 226–27 (Tex. 2010) (quoting *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh'g)).

12

## B. Question 3 and Cimco's Objection

Question 3 was conditioned on the jury's findings in Questions 1 and 2 that both Bartush and Cimco breached the agreement. Question 3 then asked the jury, if both parties failed to comply with the agreement, "[w]ho failed to comply with the agreement first?" Question 3 instructed the jury to answer "CIMCO or Bartush." The jury answered, "CIMCO."

At the charge conference, Cimco's trial counsel objected to Question 3 as follows:

> [CIMCO'S COUNSEL]: Cimco objects to the submission of Question No. 3 and that there is no evidence that Cimco failed to comply with the agreement and, therefore, there is no reason to suggest or to submit that issue.
>
> THE COURT: Your objection is noted and overruled.

Question 24—Cimco's attorney's fees question—was conditionally submitted, instructing the jury to answer it "[i]f you have answered 'Yes' to Question No. 1, 'BARTUSH' to Question No. 3, and 'No' to Question No. 4." Because the jury answered "CIMCO" to Question 3, it did not answer Question 24.

## C. Analysis

Cimco's above-quoted, no-evidence objection to Question 3 did not preserve the error alleged by Cimco in conditionally submitting Question 24 based on the jury's answers to Questions 1, 3, and 4. Cimco's no-evidence objection to Question 3 did not apprise the trial court of Cimco's complaint (raised

13

in the supreme court) that Question 24 should not be conditionally submitted based on the jury's answer of "BARTUSH" to Question 3. Because Cimco did not object to the conditional submission of Question 24—*its own question on its attorney's fees*—any error in this submission was not preserved. *See Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 631, 652 n.28 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (collecting cases to support holding that failure to object to conditioning instructions waived error arising from the jury's failure to answer question when answer could not be implied and holding that lack of objection waived right to new trial to have jury answer questions); *Hunter v. Carter*, 476 S.W.2d 41, 46 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (holding failure to object to conditioning instructions waived error arising from jury's failure to answer question); *Tex. Emp'rs' Ins. Ass'n v. Ray*, 68 S.W.2d 290, 295 (Tex. Civ. App.—Fort Worth 1933, writ ref'd) (holding appellant could not complain of jury's failure to answer question because charge instructed jury not to do so based on its answer to prior question and because appellant did not object to instruction).

Cimco argues that once a party objects to the inclusion of an invalid basis for liability in the charge, this objection preserves error for any impact the wrongful inclusion has on other charge questions. Cimco bases its argument on *McFarland v. Boisseau*, a defamation case that concerned a broad-form submission question that comingled valid and invalid theories of liability. 365 S.W.3d 449, 454–55 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Because

14

Question 3 is not a broad-form submission question comingling valid and invalid theories of liability, Cimco's authority supporting its argument is inapplicable to the facts of this case.

We hold that Cimco's objection to Question 3 failed to preserve any error arising from Question 24. Therefore, we overrule the third remanded issue.

## V. CONCLUSION

Having overruled the issues that we were instructed to address on remand and giving effect to the jury's verdict as instructed by the supreme court, we affirm the trial court's judgment that Bartush recover $168,079 from Cimco plus pre- and post-judgment interest and that Bartush recover from Cimco its attorney's fees in the amount of $165,000, reverse the trial court's judgment that Cimco take nothing, and remand this case to the trial court for entry of a judgment that Cimco recover $113,400 from Bartush plus pre- and post-judgment interest.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, GABRIEL, and PITTMAN, JJ.[9]

DELIVERED: April 26, 2018

---

[9]Senior Justice Lee Ann Dauphinot, who served on the *Bartush I* panel, did not participate in this decision on remand due to her retirement. Justice Pittman, succeeding Justice Dauphinot, has been substituted in place of Justice Dauphinot.

15



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00401-CV

| | | |
|---|---|---|
| Cimco Refrigeration, Inc. | § | From the 16th District Court |
| | § | of Denton County (2011-11002-16) |
| v. | § | April 26, 2018 |
| Bartush-Schnitzius Foods Co. | § | Opinion by Justice Walker |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in part of the trial court's judgment. It is ordered that the judgment of the trial court is affirmed in part and reversed in part. We affirm that portion of the trial court's judgment that Bartush recover $168,079 from Cimco plus pre- and post-judgment interest and that Bartush recover from Cimco its attorney's fees in the amount of $165,000. We reverse that portion of the trial court's judgment that Cimco take nothing and remand this case to the trial court for entry of a judgment that Cimco recover $113,400 from Bartush plus pre- and post-judgment interest.

It is further ordered that all parties shall bear their own costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS


By  /s/  Sue Walker
      Justice Sue Walker



Cimco Refrigeration Inc.
2707 South 4th Street
Van Buren, AR. 72956
Tel: (479) 474-5432   Fax: (479) 474-5430

November 19, 2010

Mr. Brad Casalini
Mr. John Pearson
Bartush Schnitzius Foods Company
1137 North Kealy
Lewisville, TX 75057

Subject: Plant Refrigeration Renovation

Quote: Q045-10

Cimco Refrigeration, Inc. is pleased to submit proposal to modify the plant refrigeration system at your facility. We will propose three methods of renovating the refrigeration system. Each method will have a number of features both for and against it. By offering these options we feel you will be able to make a selection that gives you the greatest value for your investment.

## Option Number One – Chilled Water system

- Centrally located Air cooled Chiller package
- Two (2) Semi Hermetic compressors 25 HP each
- Five (5) year manufacturer's warranty on the compressors is included.
- VFD drive condenser fans
- Minimizes refrigerant charge
- Primary Refrigerant charge is located outside of the plant.
- Secondary refrigerant is 30% Food Grade Propylene Glycol

Your cost for Option Number One          $ 354,050.00



Q045-10 Bartush Schnitzius.docx

Cimco Refrigeration Inc, 2707 S, 4th. Street • VAN BUREN, AR. 72956 • PHONE (479)-474-5432 • FAX (479) 474-5430

BSFC000002



## Option Number Two- Single Condensing Unit

- Centrally located Air cooled condensing unit
- Genesis Rack controller
- Three (3) Discus hermetic compressors 20 HP each
- Standard one (1) year warranty*
- Optional extended warranty available at an additional charge
- Refrigerant (R507) runs to all air coils
- Air Defrost on evaporator coils

| | |
|---|---|
| Your cost for Option Number Two | $ 332,000.00 |
| Optional Warranty | Add $2700.00 |

## Option Number Three-Multiple Condensing Units

- Air cooling evaporators are grouped to condensing units
- Scroll compressors
- One (1) year manufacturer's warranty.
- Optional extended warranty available at an additional charge
- Refrigerant (R507) runs to all air coils from multiple condensers
- Air Defrost on evaporator coils

| | |
|---|---|
| Your cost for Option Number Three | $ 282,100.00 |
| Optional extended warranty | Add $3,100.00 |

BSFC000003



(1) Lot of non-union labor to install the above, rates includes premium time to complete the installation.

(1) Lot of freight on materials shipped to the job site.

(I) Lot of equipment rental to unload and set all refrigeration equipment and materials.

Items not included in this quote:

- Taxes (Sales and Usage Taxes)
- Applicable permits and bonds.
- Housekeeping pads
- Concrete work
- Electrical (other than hook up)
- Diffusers/ grilles
- Hazardous material disposal

Note:  This price does not include any sales or usage taxes.  Please advise how the customer will pay for the taxes or if this project is tax exempt.  If tax exempt, a tax exemption certificate must be provided with purchase order.

Please call if you have any questions concerning this proposal.

We appreciate the opportunity to quote on this project.

See attached sheets for Cimco Refrigeration's, Inc. terms and conditions.

This proposal is firm for (30) thirty days.

Best Regards,

Cimco Refrigeration, Inc.

Danny Rose
Danny Rose
Branch Manager

BSFC000004



## TERMS AND CONDITIONS

SUBJECT TO WRITTEN APPROVAL BY A DULY AUTHORISED OFFICER OF CIMCO REFRIGERATION INC. (THE "VENDOR"), THIS QUOTATION, IF ACCEPTED IN WRITING BY THE PURCHASER, SHALL CONSTITUTE A BINDING CONDITIONAL CONTRACT OF SALE AS OF THE DATE OF THE PURCHASER'S ACCEPTANCE OR AS OF THE DATE OF THE VENDOR'S APPROVAL, WHICHEVER IS LATER. THIS QUOTATION IS INVALID IF NOT ACCEPTED BY THE PURCHASER WITHIN SIXTY DAYS OF THE DATE OF QUOTATION.

### 1. TITLE

(a) The title and ownership to and in the materials, equipment and other goods sold hereunder (the "goods") shall remain in the Vendor until payment in full of the Contract Price and any additional amounts payable to the Vendor pursuant to sections 2 and 10 of these Terms and Conditions. The Vendor hereby reserves, and the Purchaser hereby grants to the Vendor, a security interest in and to the goods, and the proceeds thereof, to secure the said payment and all of the other obligations of the Purchaser. At the option of the Vendor, the Purchaser will join with the Vendor in executing, in a form satisfactory to the Vendor, one or more financing statements or similar instruments pursuant to any applicable personal property security legislation. The Purchaser hereby authorises the Vendor to file one or more such statements or instruments signed by the Vendor alone as the secured party. If the goods are or are to become affixed to real property, the Purchaser represents that a true and correct description of such real property and that the name of the registered owner thereof are as indicated on Page 1 of this Quotation/Contract.

(b) In the event of default by the Purchaser under the terms of payment of this contract, the full amount of the Contract Price, less any payments previously made, shall become due and payable, and the Vendor or its agent shall have the right to enter upon the premises and remove the goods, and to dispose of them as the Vendor may determine. If the proceeds from such disposal, less any related expenses, including but not limited to costs of seizure, removal and sale, and legal costs (including reasonable attorneys'

BSFC000005



fees and expenses) connected therewith (the "net proceeds"), are not sufficient to cover the amount in default, the Purchaser shall be liable to the Vendor for such deficiency. If the net proceeds exceed the amount in default such excess shall be returned to the Purchaser, and the Vendor shall not be liable further whether in respect of completion, performance, warranty or other contract terms.

(c) The Purchaser hereby waives all rights and claims against the Vendor in the event that the circumstances provided for in section 1 (b) arise, except for the express right of recovery of excess net proceeds as provided in that section.

(d) The Purchaser hereby waives the provisions of any Conditional Sales Act or other applicable legislation which limits the Vendor's rights to seize the security provided for herein, and to sue for any deficiency. The Purchaser expressly confers upon the Vendor the rights to seize and sell the goods and to recover from the Purchaser, by action on the covenant, the principal, interest and other moneys from time to time owing under this contract.

2. PRICE ADJUSTMENTS

(a) The Purchaser shall pay all taxes, duties, levies and other charges assessed against or in respect of the goods, except those taxes, duties, levies and other charges expressly included in the Contract Price.

(b) If any taxes, duties, levies, or other charges shown to be included in the Contract Price are increased subsequent to the Date of Quotation, and increase the Vendor's costs hereunder, such increase shall be paid by the Purchaser to the Vendor.

(c) The Contract Price quoted herein is based on prices, costs and conditions prevailing at the Date of Quotation. Unless otherwise specified, if the estimated delivery and / or installation date is more than six months from the date of the contract, and if prior to shipment or installation there is an increase in the Vendor's costs due to increases in labour rates, cost of materials, suppliers' prices, foreign exchange, storage charges, or freight rates, such increase shall be paid to the Vendor by the Purchaser.

(d) If delivery or installation is delayed by the Purchaser, or by anyone under the Purchaser's control, for more than two months after the time estimated, any increase in those categories of the Vendor ' s costs listed in section 2(c) shall be paid to the Vendor by the Purchaser.

(e) All payments by the Purchaser to the Vendor under section 2 shall be in addition to the Contract Price and shall be paid at the time the final payment under the contract is due.

BSFC000006



3.   DELIVERY AND INSTALLATION - Delivery and installation times and dates are approximate and are subject to extension for delays caused by fire, strike, lockout, labour dispute, civil or military authority, riot, embargo, car shortage, wrecks or delays in transportation, Acts of God, late delivery or non-delivery by the Vendor's suppliers, changes in the scope of the work as provided in section 8 of these Terms and Conditions, or other causes beyond the reasonable control of the Vendor, and the Vendor shall not be liable for any losses or damages resulting from any such causes. Acceptance of the work shall be a waiver by the Purchaser of all claims for damages for delay from any cause whatsoever.

4.   RESPONSIBILITY AND INSURANCE

   (a)   In respect of goods sold F.O.B. point of origin, the Vendor shall deliver the goods in good condition to a common carrier or to the Purchaser at the Vendor's shipping point, and thereupon all risks of loss or damage thereto shall pass to the Purchaser.

   (b)   In respect of goods sold F.O.B. job site or sold with installation, all risks of loss or damage shall pass to the Purchaser upon receipt of the goods at the job site or at the Purchaser's designated delivery point.

   (c)   The Purchaser shall insure the goods against loss or damage from fire, theft, malicious damage or other causes as and from the time the Purchaser becomes responsible for the goods pursuant to sections 4(a) and 4(b) of these Terms and Conditions. The face value of the insurance policy shall be in an amount not less than the Contract Price. Any loss under such insurance policy shall be made payable to the Vendor as its interest may appear until the Contract Price shall be paid in full.

   (d)   Upon the request of the Vendor, the Purchaser shall provide an insurance certificate as evidence of the compliance with section 4(c) of these Terms and Conditions.

5.   TERMS OF PAYMENT

   (a)   Unless otherwise specified in this Quotation/Contract, payment shall be made by the Purchaser to the Vendor in respect of the Contract Price as follows:

BSFC000007



    (i) Goods sold without installation: 25% upon acceptance of this quotation by the Purchaser; an amount representing the value of each shipment, payable upon delivery; and the unpaid balance upon final shipment.

    (ii) Goods sold with installation: 25% upon acceptance of this quotation by the Purchaser; an additional 30% upon written notification by the Vendor to the Purchaser that the goods are ready for shipment; an additional 35% immediately after installation but prior to the commencement of operation of the goods or related systems; and a final payment of 10% upon completion.

(b) Timely payment according to the terms of this Quotation/Contract is of the essence of the contract.

(c) Payment shall be made in the specified currency.

6.     WARRANTY - UNLESS OTHERWISE SPECIFIED IN THIS QUOTATION/CONTRACT, THE VENDOR WARRANTS THE GOODS AND INSTALLATION SOLD HEREUNDER AGAINST ORIGINAL DEFECTS IN MANUFACTURE AND WORKMANSHIP FOR A PERIOD OF ONE YEAR FROM COMPLETION AS DEFINED IN SECTION 9 OF THESE TERMS AND CONDITIONS. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, STATUTORY OR OTHERWISE, EXPRESS OR IMPLIED, INCLUDING FOR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE TERMS OF THE VENDOR'S WARRANTY ARE AS FOLLOWS:

(a) In respect of goods sold without installation, the Vendor's sole liability shall be to repair or replace, at the Vendor's option, F.O.B. point of manufacture, any defective goods or parts thereof.

(b) In respect of goods sold with installation, the Vendor's sole liability shall be to repair or replace, at the Vendor's option, any defective goods or parts thereof or any defective workmanship. The Vendor shall be responsible for all of its costs in connection therewith other than the out-of-pocket expenses incurred by the Vendor's employees and agents travelling from the Vendor's nearest place of business to the jobsite and charges for labour performed after normal working hours at the request of the Purchaser, which latter expenses and charges shall be for the account of the Purchaser.

BSFC000008



(c) The Vendor warrants goods not of the Vendor's manufacture only to the extent to which the Vendor is able to enforce a claim for liability against the manufacturer thereof.

(d) The Purchaser shall promptly give written notice to the Vendor after the discovery of an apparent defect.

(e) As a condition precedent to any liability by the Vendor hereunder, the Purchaser shall use, operate and maintain the goods and related systems in a careful, prudent, and reasonable manner, and in conformity with the Vendor's and / or the manufacturers' instructions.

(f) THE FOREGOING CONSTITUTES THE PURCHASER'S EXCLUSIVE REMEDY AND THE VENDOR'S SOLE LIABILITY ARISING OUT OF THE DESIGN, MANUFACTURE, SALE, INSTALLATION, OR USE OF THE GOODS.

(g) This warranty shall be void if the Purchaser is in default under the terms of payment of this contract.

7. The Vendor shall not be liable for any losses, injuries, expenses or damages, whether direct, indirect, special, incidental, consequential or punitive, arising out of the goods, or the installation, operation, or failure of operation of the goods or related systems even if caused by the Vendor's negligence.

8. CHANGE IN SCOPE OF WORK - If the Purchaser requests a change in the scope of the work under this Quotation/Contract, the Vendor will submit a Contract Revision to the Purchaser which shall set forth the proposed changes in the work, and if the proposed changes result in an addition to or a deduction from the Contract Price, the Contract Revision shall set forth the amount of such addition or deduction. A Contract Revision shall not be binding or enforceable unless accepted in writing by the Purchaser and approved in writing by a duly authorised officer of the Vendor. Upon such acceptance and approval, the Contract Revision shall become part of the contract and, except when inconsistent therewith, shall be subject to all its provisions.

9. COMPLETION AND ACCEPTANCE OF WORK

BSFC000009



(a) In respect of goods sold without installation, "Completion' shall be deemed to occur when risk of loss of the goods passes to the Purchaser in accordance with section 4 of these Terms and Conditions.

(b) In respect of goods sold with installation, and unless otherwise defined in this Quotation/Contract, 'Completion" shall be deemed to occur when any one of the following events takes place:

   (i) The Purchaser signs an acceptance certificate;
   (ii) The Vendor has installed and, where applicable, successfully tested the installation;
   (iii) The Purchaser commences regular use of the goods or related systems;
   (iv) An independent expert, mutually acceptable to the Purchaser and the Vendor, certifies that the work has been completed.

(c) Nothing in subsections (a) or (b) shall relieve the Vendor from its obligation to honour the warranty provisions contained herein.

(d) The occurrence of any one of the events described in section 9(b)(i), (iii) and (iv) shall constitute acceptance of the work.

10. BONDS - Performance bonds and material and labour payment bonds will be provided by the Vendor upon request. Unless the Contract Price expressly includes the cost of such bonds, the Purchaser, in addition to the Contract Price, shall pay the cost of such bonds to the Vendor at the time of the receipt thereof by the Purchaser.

11. MISCELLANEOUS.

(a) This Quotation and any resulting contract shall be governed, enforced and construed in accordance with the laws of the State of New York without regard to that state's rules governing conflict of laws.

(b) All rights and remedies of the Vendor under this contract and under applicable law shall be cumulative and may be exercised successively or concurrently, in any order, and on more than one occasion. The election by Vendor to exercise one remedy shall not preclude it from thereafter exercising one or more other remedies.

(c) The Purchaser agrees to pay, in addition to the other amounts payable to Vendor under the contract, all costs and expenses, including reasonable attorneys' fees, incurred by the Vendor in enforcing this contract, exercising its rights hereunder

BSFC000010



or collecting or attempting to collect all amounts due the Vendor hereunder following default by the Purchaser in the payment or performance of its obligations hereunder, including those incurred in connection with any bankruptcy, insolvency, liquidation, reorganization or similar proceeding involving the Purchaser.

(d) Any assignment or attempted assignment of this contract, in whole or in part, without the prior written consent of the Vendor shall be void. The Vendor may assign any of its rights, liabilities or obligations arising out of this contract without prior notice to the Purchaser and without the Purchaser's written consent.

(e) If any provision of this contract is unenforceable, such unenforceability shall not affect the remaining terms, which shall be enforced, if the same can be done, without regard to the unenforceable provision.

(f) The headings to the paragraphs of this contract are provided for ease of reference only and shall not be construed to vary or limit the terms thereof.

THIS QUOTATION/CONTRACT CONTAINS THE COMPLETE AGREEMENT BETWEEN THE PURCHASER AND THE VENDOR, AND SUPERSEDES ALL PRIOR ORAL OR WRITTEN REPRESENTATIONS, PROMISES, AGREEMENTS OR UNDERSTANDINGS WITH RESPECT TO THE SUBJECT MATTER HEREOF. NO REPRESENTATION, PROMISE, AGREEMENT OR UNDERSTANDING ENTERED INTO OR MADE SUBSEQUENT TO THE DATE OF THE CONTRACT WHICH VARIES OR MODIFIES THE PROVISIONS OF THIS CONTRACT SHALL BE BINDING ON THE VENDOR UNLESS CONVEYED IN WRITING AND EXECUTED BY A DULY AUTHORISED OFFICER OF THE VENDOR.

BSFC000011



Visit us at www.cimcorefrigeration.com

December 2, 2010

## Refrigeration Comparison

### Chilled Water System

Advantages:

- Freon Charge is out of the facility reducing the chance of contact with production workers.
- Freon charge is only in chiller package outside resulting in significantly reduced Freon charge.
- Centrally located condensing unit built for easy maintenance.
- One housekeeping pad and one electrical point for condensing unit.
- Commercial/Industrial type unit designed for longer service longevity.
- Electrical connection for condensing unit in one place.

Disadvantages:

- Longer lead time for equipment. Not an in stock item.
- Two refrigerant mediums to deal with.
- Less than one percent efficiency loss due to using secondary refrigerant.
- Initial cost of equipment is more expensive.

### Single Condensing unit System

Advantages:

- Centrally located condensing unit built for easy maintenance.
- One housekeeping pad and one electrical point for condensing unit.
- Commercial/Industrial type unit designed for longer service longevity.
- Electrical connection for condensing unit in one place.
- Initial cost of equipment is less expensive that chilled water system.

Disadvantages:

- Longer lead time for equipment. Not an in stock item.
- Freon Charge is in the facility increasing the chance of contact with production workers.
- Initial cost of equipment is more expensive than packaged units.

CIMCO Refrigeration Inc.
2707 South 4th. Street • Van Buren, AR 72956

Tel: (479) 474-5432
Fax (479) 474-5430

St.John's, Dartmouth, Moncton, Alma, Quebec City, Gaspe, Montreal, Ottawa, Toronto, London, Windsor, Winnipeg, Saskatoon, Calgary, Edmonton, Kelowna, Vancouver, Victoria
Hartford, CT – Syracuse, NY – Phoenix, AZ – Detroit, MI – Mobile, AL – Van Buren, AR - Beijing, China

BSFC000012

## Multiple Packaged Condensing Unit Systems

Advantages:
- Most of items are in stock so lead times will be shorter on equipment.
- Initial cost of equipment is less expensive that chilled water system and Single Condensing unit system.

Disadvantages:
- Multiple condensing units resulting in multiple service points.
- Larger Freon charge that other (2) systems.
- Multiple housekeeping pads and several electrical points for multiple condensing units.
- Commercial type unit resulting in shorter service longevity.
- Higher energy costs due to multiple condensing units.
- Freon Charge is in the facility increasing the chance of contact with production workers.

Danny Rose
CIMCO refrigeration
Van Buren Branch Manager
(479) 474-5432



CIMCO Refrigeration Inc.
2707 South 4th. Street • Van Buren, AR 72956

Tel: (479) 474-5432
Fax (479) 474-5430

St.John's, Dartmouth, Moncton, Alma, Quebec City, Gaspe, Montreal, Ottawa, Toronto, London, Windsor, Winnipeg, Saskatoon, Calgary, Edmonton, Kelowna, Vancouver, Victoria
Hartford, CT – Syracuse, NY – Phoenix, AZ – Detroit, MI – Mobile, AL – Van Buren, AR - Beijing, China

# John Pearson

**From:** John Pearson
**Sent:** Monday, January 24, 2011 2:52 PM
**To:** 'Michael Winslow'
**Subject:** Glycol Refrigeration

*This is to confirm that we have awarded Cimco Refrigeration the Glycol Refrigeration Upgrade as per Cimco proposal Q045-10, Option One, dated November 19, 2010 in the amount of $354,050.00.*

*Please use PO BSF101016, dated January 13, 2011 as your reference.*

John Pearson
Maintenance Manager
Bartush Schnitizius
972-219-1270
1137 N. Kealy
Lewisville Texas 75057



PLAINTIFF'S
EXHIBIT
12

1

BSFC000065